## LORENE BOGGS *v.* CITIZENS BANK AND TRUST COMPANY OF MARYLAND ET AL.

[No. 415, September Term, 1975.]

*Decided September 10, 1976.*

The cause was argued before MOORE, LOWE and MELVIN, JJ.

*Robert C. Heeney*, with whom were *William H. Adkins, III* and *Heeney, McAuliffe, Rowan & Abell* on the brief, for appellant.

*Francis J. Ford* for appellees.

MELVIN, J., delivered the opinion of the Court.

This case presents the single issue of whether a collecting bank may with impunity dishonor checks of its customer for insufficient funds, when the insufficiency is caused by the unilateral action of the collecting bank in charging back to the customer's account the amount of a check deposited by the customer seven months prior to the charge-back.

The appellant, Mrs. Lorene Boggs, claiming that a collecting bank has no such right, filed suit in the Circuit Court for Prince George's County against the Citizens Bank and Trust Company of Maryland, the appellee here. The suit is based on the tort of wrongful dishonor, a cause of action recognized in this State by § 4-402 of the Maryland Uniform Commercial Code.[1] See also *Siegman v. The Equitable Trust Company*, 267 Md. 309 (1972) and *Magness v. Equitable Trust Company*, 176 Md. 528 (1939).

---

1. Now codified in the Commercial Law Article of the Annotated Code of Maryland, §§ 1-101 to 10-104 (formerly Code Art. 95B). All section numbers cited in this opinion refer to Maryland's U.C.C. so codified.
Section 4-402 reads as follows:

"§ 4-402. Bank's liability to customer for wrongful dishonor.
A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

At the close of all the evidence the trial judge withdrew the case from the jury by granting the bank's motion for a directed verdict. In her timely appeal, Mrs. Boggs claims the motion was improperly granted. We agree and shall remand the case for a new trial.

In reviewing the propriety of the granting of a motion for a directed verdict, the invariable rule is that all evidence and inferences rationally drawn therefrom must be considered in the light most favorable to the party against whom the motion is made. *Beckner v. Chalkley,* 19 Md. App. 239 (1973). And if there is in the record any legally relevant and competent evidence to prove a party's case, a directed verdict should not be granted. *Jacobson v. Julian,* 246 Md. 549 (1967); *Miller v. Michalek,* 13 Md. App. 16 (1971). Applying these tests to the record before us, we think there is evidence from which the jury could have found the following:

On June 29, 1971, Mrs. Boggs deposited in her checking account at the appellee bank a check for $548.80. The check was dated May 24, 1971, drawn by the Prudential Insurance Company on the Provident National Bank in Philadelphia, Pennsylvania, and payable to Dr. John T. Lord. Prior thereto Mrs. Boggs had received medical treatment from Dr. Lord and other doctors, the expense of which was covered by an insurance policy she had with Prudential Insurance Company, the drawer of the check.

At the time she received the check from Prudential the balance she owed Dr. Lord was only $187.00. On June 29, 1971, she took the check to Dr. Lord's office and explained to a receptionist that the check was for more than she owed Dr. Lord and asked how the matter should be handled. Dr. Lord appeared in the reception room and agreed that she should take the check and send him her personal check for what he was owed. Dr. Lord then endorsed the check and the receptionist wrote "pay to Lorraine Boggs" [2] under the doctor's endorsement. Mrs. Boggs then took the check, endorsed it herself and deposited it that same day in her

---

2. Mrs. Boggs spells her first name "Lorene".

checking account at the appellee bank. The check was processed normally and honored by the payor bank in Philadelphia. In July, 1971, Mrs. Boggs paid Dr. Lord by her personal check the amount owed him and for the next six months Mrs. Boggs continued to make withdrawals and deposits at the appellee bank with which she had been doing business without difficulty since 1962.

By a notice dated January 27, 1972, approximately seven months after the insurance check had been deposited, Mrs. Boggs was informed by the appellee bank that a check for $20.00 she had drawn on her account was "returned for insufficient funds". She called the bank and was told that a "hold" had been placed on her account because of an allegation that the appellee had received that the $548.80 check deposited seven months earlier contained a forged endorsement. Several days later she received a notice in the mail, dated February 2, 1972, that her account was debited $548.80. The notice also informed her that two more of her checks had been dishonored by the appellee bank for insufficient funds. If the appellee had not recharged Mrs. Boggs' account there would have been sufficient funds to cover all demands drawn against the account. On the same date, February 2, 1972, the appellee bank refunded to an intermediate bank its treasurer's check for the $548.80. It was from the intermediate bank that the appellee bank had received by a transmittal dated January 24, 1972, the following:

> "We are enclosing herein without entry the following described paid and cancelled check(s) [the Prudential check for $548.80] returned for Refund, forged endorsement, affidavit attached.
>
> "Kindly have corrected and return to us at your earliest convenience".

The "affidavit attached" was a form sworn to by Dr. Lord, dated January 4, 1972, in which he stated that the endorsement on the check was not his, that he did not authorize anyone to sign his name to the check, and that he never received the "proceeds of said check from any person

whomsoever, nor did I receive credit from any person for the proceeds of said check". The affidavit form had been prepared and sent to Dr. Lord by Prudential after he had been sent a photo copy of the check by Prudential and asked whether he had endorsed the check. The record is silent as to what may have aroused Prudential's suspicions concerning the genuineness of his signature.

The appellee bank received the January 24, 1972 transmittal from the intermediate bank on January 25, 1974 and immediately placed a "hold" on her account, without notifying Mrs. Boggs.

The bank has never claimed that Mrs. Boggs forged Dr. Lord's endorsement. Indeed, the bank affirmatively disclaims any such contention.

In directing a verdict for the appellee bank, the trial judge felt the bank had "every legal right to charge back . . . the proceeds from the" insurance check because the bank itself was charged with that amount by the intermediate bank and had in fact refunded the proceeds to the intermediate bank, and because he saw "no testimony where the bank has done anything illegal".

We think the issue in this case is controlled by § 4-212, "Right of charge-back or refund". The section, in pertinent part, reads as follows:

> "(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge-back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the item if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. *These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item*

*received by the bank is or becomes final* (subsection (3) of § 4-211 and subsections (2) and (3) of § 4-213).

"(2) *Within the time and manner prescribed by this section and § 4-301,* an intermediary or payor bank, as the case may be, may return an unpaid item directly to the depositary bank and may send for collection a draft on the depositary bank and obtain reimbursement. In such case, if the depositary bank has received provisional settlement for the item, it must reimburse the bank drawing the draft and any provisional credits for the item between banks shall become and remain final." (Emphasis added.)

Patently, in this case, the Prudential check had been finally settled and paid long before the intermediate bank called for a refund from the collecting appellee bank. The fact that the appellee bank acceded to the intermediate bank's request to refund the $580.80 did not give the appellee bank the right unilaterally to charge back to Mrs. Boggs' account the amount it had so refunded or to place a "hold" on her account. Any such right terminated when the payor bank made final settlement seven months before. In commenting on § 4-212, *Anderson on the Uniform Commercial Code* (2d Ed. Vol. 3, 1971) has this to say, at p. 263, § 4-212:10:

"After final settlement of an item, a customer's bank changes from an agent for collection to a debtor of the customer, from which it follows that the bank cannot make any refund from the customer's account to the drawee bank upon the basis that the latter claims that an indorsement was forged."

Appellee's reliance on the *622 West 113th St. Corp. v. Chemical Bank, N. Y. Trust Co.,* 276 N.Y.S.2d 85 (1966), is misplaced. In that case from New York's Civil Court, the plaintiff claimed that it had deposited in the defendant bank a Department of Welfare check with an endorsement by a

person who had identified herself as the payee on the check. The opinion states the further pertinent facts, as follows:

> "On the trial, the bank proved that six months after it had credited plaintiff for the amount of the check, it was notified by its correspondent bank that the Department of Welfare claimed the endorsement had been forged, forwarded a copy of an affidavit to that effect, and that as a result the bank repaid the drawee bank and the amount of the check was deducted from plaintiff's account."

Citing U.C.C., §§ 4-212 and 4-207(2)(b),[3] the court recognized the right of a collecting bank to recharge *provisional* credit given on a deposit. It noted, however, that once final settlement has occurred on a check,

> ". . . the bank cannot then unilaterally deduct sums from the account credited to a depositor. After final settlement, and the charging of the amount of the check against the drawer's account, a voluntary refund by the collecting bank is at its own peril, for there are defenses it could interpose to resist payment . . . . The mere assertion of a claim to any part of a deposit does not permit a bank on its own to recognize the validity of that claim." at 89.

The New York court ultimately dismissed the claim by the plaintiff, that the bank had no right to debit the account, because it made the factual determination that the defendants had proven the check was indeed forged, and therefore the plaintiff was liable to defendant bank for the amount of the check on its § 4-207 (2) (b) warranty that all signatures on the check were genuine.

The present case is different from the New York case in that the plaintiff there was suing for recovery of the funds

---

**3.** (2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that

\* \* \*

(b) All signatures are genuine or authorized.

that it claimed were wrongfully debited from its account. The court concluded that although the defendant bank was wrong in debiting the account in the manner it did, the defendant bank was entitled to the money because in the trial it was proven that the endorsement on the check was a forgery. In the case *sub judice* the suit is not one for the recovery of the money debited, but is rather a suit charging the bank with wrongfully dishonoring demands on the account in which there would have been sufficient funds in the account to pay the demands but for the bank's act of debiting the account.

The appellee here does not claim that its right to charge back appellant's account depends upon whether or not Dr. Lord's signature was in fact a forgery. It claims only that it acted in accordance with "reasonable commercial standards" under the circumstances, citing *Dominion Construction, Inc. v. First National Bank of Maryland*, 271 Md. 154 (1974). That case involved the application of § 3-406 [4] to the particular facts of the case and is totally inapposite to the case now before us. The issue there was whether the defendant bank had breached its duty "not to cash or pass . . . a check except for the endorsement of the designated payees". It was held that the plaintiff, the drawer of the check, was negligent in drawing the check as it did, and that the bank in paying the check acted "in accordance with . . . reasonable commercial standards of [its] business".

Here, the central issue is whether the appellee bank had a legal right to debit its customer's account under the circumstances described. To prevail on its motion for a directed verdict, it must be shown that on the evidence it had such right as a matter of law. As we have shown, § 4-212 sets forth the circumstances under which the right

---

4. § 3-406. Negligence contributing to alteration or unauthorized signature.

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

can legally be exercised. Because there is abundant evidence in the case that the appellee had no right to debit or charge back the appellant's account and because on that right depended the propriety of the dishonor of appellant's checks, we hold that the trial judge erred in directing a verdict for the defendant bank, the appellee here. The judgment below will therefore be reversed and the case remanded for a new trial.

*Judgment reversed.*
*Case remanded for new trial.*
*Costs to be paid by appellee.*