RICHARD L. STACK *v.* CAPITAL-GAZETTE NEWSPAPERS, INC.

[No. 978, September Term, 1980.]

*Decided April 13, 1981.*

The cause was argued before LISS, COUCH and WEANT, JJ.

*Russell Jay Bennett* for appellant.

*Peter F. Axelrad,* with whom were *Mary K. Farmer* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

This appeal involves the propriety of an order of the Circuit Court for Anne Arundel County by which it granted a motion for a directed verdict in favor of Capital-Gazette Newspapers, Inc. in a libel action brought by appellant, Richard L. Stack. Appellant was a Republican candidate in District 32 for the Maryland Senate in the November, 1978 general election, an election he lost to his Democratic opponent. The instant case was precipitated by the publishing of allegedly defamatory editorials by appellee October 26 and 27, 1978 in its newspapers, *The Maryland Gazette* and *Evening Capital.* After publication of the articles, and before the election, the appellant sued the appellee seeking damages. At the conclusion of all the evidence the trial judge directed a verdict in favor of appellee, and this appeal followed. A single issue is raised — did the trial judge err in granting appellee's motion?

Since the appellant clearly was a public figure and the alleged defamatory statements were published by a newspaper, the right to recover is governed by *New York Times v. Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). *See also Kapiloff v. Dunn,* 27 Md. App. 514, 343 A.2d 251 (1975), and *A.S. Abell Co. v. Barnes,* 258 Md. 56, 265 A.2d 207 (1961). In *Kapiloff,* then Chief Judge Orth, quoting from *New York Times,* stated:

"[T]he *New York Times* standard defines the level of constitutional protection appropriate to the context of defamation of a public person. Those who, by reason of the notoriety of their achievements or

the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth. . . ." *Id.* at 516.

This standard was expressly reaffirmed in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). Thus it seems settled that before appellant would be entitled to recover he had the burden of showing by clear and convincing evidence that the editorials were defamatory and that their publication was made either with knowledge of their falsity or with reckless disregard for the truth. Furthermore, as explicated in *Garrison v. Louisiana,* 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964), knowing falsity or reckless disregard for truth involves proof of a high degree of awareness of probable falsity such that a defendant entertained serious doubts as to the truth of his public action. *See also St. Amant v. Thompson,* 390 U.S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968).

### The Facts

The appellant was the Republican candidate in District 32 for the Maryland Senate in the November, 1978 general election. On October 26 and 27, 1978, the appellee published the following editorial in its two newspapers, *The Maryland Gazette* and the *Evening Capital:*

### "DISTRICT 32

THIS SENATE race in north county has been the biggest disappointment of any race in the area. What should have been a responsible battle between two intelligent men has turned into one of gutter politics — all because of the tactics of Republican challenger Richard Stack.

After the smoke of their primary battles had cleared, we expected a race between Stack and H. Erle Schafer, two intelligent, personable candidates who we thought would discuss the issues which would affect the people of this northern Anne Arundel County district.

Instead, Stack chose to take the low road — a la former Sen. Joseph McCarthy. He had been conducting a campaign of smears and innuendos in attempting to divide the district's many Democrats.

Stack has refused to discuss the issues. While Schafer answered the many questionnaires sent out by more than 20 political organizations, Stack not only refused to answer the questions, he demanded that the organizations provide him with Schafer's answers.

He insinuated that Schafer's Democratic primary opponent, Michael Wagner, was supporting him in the general election. He even said that Schafer's running mate, Del. Tyras Athey, was on his side.

Both allegations have proven to be false — as have many other things Stack has said in the campaign.

Schafer is a former county councilman and is on leave of absence from his county job as Glen Burnie urban renewal director. He certainly has more experience in government than Stack and from what we have seen in this race is a more responsible human being.

The overwhelming choice here is Schafer. Stack does not belong in public office."

On November 1, 1978, appellant filed the instant suit alleging that the appellee published the above editorial "with knowledge that the statements were false, or with reckless disregard as to whether the statements were true or false". Both compensatory and punitive damages were sought. Appellant offered evidence to the effect that he actively campaigned, attended numerous coffees where he

discussed the issues of the campaign, debated his opponent on the issues twice, attended numerous candidates' nights where he discussed the issues, conducted a walking door-to-door campaign, answered certain questionnaires submitted to him by newspapers or organizations not representing special interests, and submitted to interviews by members of the press. He conceded that he refused to answer endorsement questionnaires from groups or organizations which represented special interests. There was further evidence that, prior to the publishing of the editorial, appellant had attended an editorial interview with appellee's representatives, reporters and editor of *The Maryland Gazette,* at which appellant stated that he had the support of Tyras Athey, his opponent's ticket mate, and Michael Wagner, whom his opponent defeated in the Democratic primary. This statement was later denied by Athey and Wagner in an interview with appellee, although one of appellee's reporters had written an article, published in *The Maryland Gazette* on October 23, 1978, in which both Athey and Wagner were reported to have done certain things which could be interpreted as one time support for appellant. This article, however, made clear that neither man presently supported Stack. There was also evidence that Edward D. Casey, appellee's executive editor, had observed a political advertisement placed by appellant in *The Maryland Gazette* asking whether Schafer, appellant's opponent, had "sold out," which Casey felt unfairly suggested that Schafer had "given something away." It was shown, however, that two of the three such advertisements were published after the editorial. Casey admitted on cross examination that his statement relative to "smears and innuendos" stemmed from the advertisements. He further explained that the basis for his statement about Wagner's and Athey's support as being false was their direct denial of support for Stack. He could not explain the statement that "many other things Stack has said in the campaign" have proven to be false.

The record reveals the following colloquy between appellant's counsel and Mr. Casey, appellee's executive editor:

"Q And I believe you stated in your editorial, both allegations are proven to be false with reference to the allegation of Wagner and Athey's support — as have many other things that Stack has said in the campaign. What were the many other things that Mr. Stack said in his campaign that proved to be false?

MR. AXELRAD [Appellee's attorney]: Objection.

COURT: Overrule it. You may answer.

A I don't know exactly many other things.

Q Well, that's what it says. It says, as have many other things.

A I'm not finished my answer. I would say that running advertisements, has Erle Schafer sold out. I mean, I think that is certainly a smear and an innuendo. And in my mind, at least, an untruth, because you can —

Q That's not the question.

MR. AXELRAD: Well, wait a minute. That's the answer.

COURT: Let him finish. You may finish, Mr. Casey.

A Could I have the question repeated again, please?

Q I asked you, what did you base the statement, as have many other things Stack has said in the campaign being proven to be false. What did you base that on?

A All right. Again, running advertisements like, has Mr. Schafer sold out. I believe that is, to me, a very damaging question. When you're questioning the integrity, you're questioning, has Mr. Schafer given something away. In return for what I don't know, because he hadn't voted on anything yet. Whether he's trying to plant in the minds of the reader that on every vote that Mr. Schafer makes he'll be giving something away to somebody, be promising somebody something. I think it's a definite smear, a definite innuendo. I'm just trying to

recall some other things here now. Oh, I would definitely say when he — he tells me to my face that he has the support of Mr. Athey and Mr. Wagner, and then less than 24 hours later these two people tell me to my face that in no way are they supporting him. I think — I'd have to say that's an untruth.

Q Okay. Now, I let you finish your answer, and I'll go back and ask the question again. I prefaced the question when I asked it with both allegations have proven to be false. The two that you just gave me, with reference to Agner — with reference to Athey and Wagner. It also says, as have many other things Stack has said in the campaign. The other thing you said was an ad that asked a question, has Erle Schafer sold out. Now, I'm asking you, what other things he said in the campaign that proved to be false?

MR. AXELRAD: Objection. He's already asked it.

COURT: Overrule it. You may answer, sir, if you haven't already.

A I cannot be specific any more than I have been on something that happened a year and a half ago.

Q So, there —

A I can't remember anything else at this point."

The appellee contends there was no error by the trial court in granting the motion for a directed verdict because:

(1) there was a failure by appellant to show by clear and convincing evidence that the defendant acted with actual malice;

(2) the defendant's editorial was constitutionally protected opinion and fair comment;

(3) there was no clear and convincing evidence that the editorial was false.

Further facts will be supplied as necessary in our discussion of the issue.

## The Law

As stated above, appellant's burden, to survive the motion for directed verdict, was to offer clear and convincing evidence that the editorial was false and made with actual malice. The law is settled that actual malice is the making of a statement with knowledge of its falsity or with reckless disregard for its truth or falsity. *New York Times, supra; Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980). As this Court said in *Hohman v. A.S. Abell Co.,* 44 Md. App. 193, 407 A.2d 794 (1979):

> "These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. *There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." Id.* at 201. (Emphasis in original.)

Against this standard the evidence must be measured, along with the requirement that in ruling on appellee's motion the trial judge must view the evidence in a light most favorable to the appellant. *Boggs v. Citizens Bank & Trust Co.,* 32 Md. App. 500, 363 A.2d 247 (1976).

## The Decision

The evidence before the Court, when viewed in a light most favorable to the appellant, was such that if believed by the trier of fact it could conclude there was "clear and convincing" evidence of a reckless disregard of the truth or falsity of some of the statements made in the editorial. With reference to the statement about refusing to answer certain questionnaires, Stack told appellee why he did not answer those from organizations representing special interests but did answer others. Appellant also had discussed issues on

other occasions. With respect to the editorial statement about certain Democratic support, appellee obviously ignored the earlier news story in *The Maryland Gazette* which, to some extent, supported appellant's statement. Appellee had no explanation for that portion of the editorial wherein Stack was accused of making many other statements in the campaign which had proven to be false. In short, at least so far as that part of the editorial which states "as have many other things Stack has said in the campaign" is concerned, it would appear that appellee could be found to have recklessly disregarded the truth or falsity of that statement; thus the fact finder could have found actual malice.

With regard to appellee's argument that the editorial was protected because it was an opinion and fair comment, we need not tarry long. Parts of the editorial probably fall into this class but that portion stating, in effect, that appellant had lied on many other occasions during the campaign was, in our view, a statement of fact. In *A. S. Abell Co. v. Kirby,* 227 Md. 267, 176 A.2d 340 (1961), the Court of Appeals stated in part:

> "The majority of the States (perhaps three-fourths) hold that the immune instances of public discussion are those limited to opinion, comment, and criticism, and do not embrace those in which there is any false assertion of defamatory fact. (Citations omitted.)
>
> Maryland has consistently followed the majority rule — that defamatory misstatement of fact cannot be defended successfully as fair comment." *Id.* at 273.

The Court went on to state, at 274:

> "The distinction between 'fact' and 'opinion,' although theoretically and logically hard to draw, is usually reasonably determinable as a practical matter: Would an ordinary person, reading the matter complained of, be likely to understand it as

an expression of the writer's opinion or as a declaration of an existing fact? An opinion may be so stated as to raise directly the inference of a factual basis, and the defense of fair comment usually has been held not to cover an opinion so stated."

Appellee also argues that there was no clear and convincing evidence that the editorial was untrue. Again, insofar as the statement therein about many other statements made by appellant during the campaign being false, we believe that appellant offered evidence which, if believed by the trier of fact, would show clearly that that statement was untrue. There was, for example, the testimony of a Mr. Farrell, one of appellee's reporters assigned to cover the campaign in District 32, that he knew of no instance during the campaign where the appellant had lied.

What the ultimate outcome of a jury trial here will be is, of course, unknown, and we have no desire to be interpreted as indicating what the outcome should be. We do hold that appellant should have had his case go to the jury.

*Judgment reversed; case remanded for a new trial.*
*Costs to abide the result.*