637 So.2d 279 (1994)
SUN BANK, N.A., Appellant,
v.
MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., etc., Appellee.
No. 93-1253.
District Court of Appeal of Florida, Fifth District.
April 22, 1994.
Rehearing Denied June 1, 1994.
*280 Joseph G. Hern, Jr. Orlando, for appellant.
Jason Hedman of Dean, Mead, Spielvogel & Goldman, Merritt Island, for appellee.
GOSHORN, Judge.
Sun Bank, N.A. appeals from the final summary judgment entered in favor of Merrill Lynch, Pierce, Fenner and Smith, Inc. (Merrill Lynch). We affirm.
Citizens and Southern Capital Corporation (C & S Capital) wrote a check from its account at Citizens and Southern National Bank (C & S Bank) payable to Physician's Computer Systems, Inc. (PCS) for $60,000. Sun Bank's complaint alleges that C & S Capital delivered the check to PCS where a PCS employee surrendered it to Scott C. Berry. Berry endorsed the check as PCS's "C.O.O." (chief operating officer). Thereafter, Berry delivered the check to J. Michael Sutherland, President of Cosmopolitan Lady Spa, Inc./Cosmopolitan Fitness Corporation (Cosmopolitan), who endorsed it and deposited it in Cosmopolitan's account at Merrill Lynch. Merrill Lynch deposited the check into its account at Sun Bank and received final settlement and payment on March 16, 1988. Sun Bank then credited Merrill Lynch's account and received payment from C & S Bank.
More than one year later, C & S Bank, through the affidavit of PCS's president, D. Scott Gettings, advised Sun Bank that Berry's endorsement was unauthorized.[1] Mr. Gettings' affidavit stated in pertinent part:
The check was endorsed by an unknown person with the title of "C.O.O.". "Chief Operating Officer" is the title given by our company to the full time manager of our company. The Chief Operating Officer just prior to the time this check was deposited was Scott C. Berry. However, he left our employment on February 20, 1988. Whoever endorsed this check did not have the authority to to [sic] perform this function on behalf of Physicians' Computer Systems, Inc.
Merrill Lynch responded, denying liability and asserting that the check was signed by an authorized agent of PCS. Nevertheless, on April 24, 1989, without notifying Merrill Lynch, Sun Bank debited $60,000 from Merrill Lynch's account.
Consequently, Merrill Lynch filed suit against Sun Bank alleging that Sun Bank wrongfully debited the $60,000 from Merrill Lynch's account. The court dismissed Count I, statutory negligence, but allowed the parties to proceed under Count II, breach of contract because final payment had occurred and "under the U.C.C., a bank has no right to unilaterally debit or charge back its customer's account once final settlement has occurred."
Thereafter, Merrill Lynch filed its motion for summary judgment and presented an affidavit as to the undisputed fact that Sun Bank debited $60,000 from its account. Sun Bank filed a written response and attached its senior operations officer's affidavit detailing the factual background regarding the receipt of the claim. After a hearing on the motion, the court entered its final judgment in favor of Merrill Lynch.
We begin our analysis with Florida Statute, section 674.212 (1991)[2] which provides that if a provisional settlement has occurred, a bank may revoke the settlement, charge back the amount to its customer, or obtain a refund from its customer. The section requires that the bank act by its midnight deadline or within a longer reasonable time after it learns of the problem or it becomes liable for the loss resulting from the delay. However, in this case, settlement had become *281 final.[3] Section 674.213(1) specifically provides that when a settlement becomes final, the right to revoke, charge back, or obtain a refund is terminated.
Sun Bank argues that the court should recognize an exception to this rule when a check contains a forged or unauthorized endorsement. Sun Bank cites Barkley Clark, The Law of Bank Deposits, 8-87 (3rd ed. 1990) as support for its contention. Clark asserts that final payment can be reopened where material alterations or endorsements are involved. However, Clark's claim is in direct conflict with the Florida Code Comments to section 673.418[4] which provide:
[A]ny payment or acceptance becomes final in favor of a holder in due course of his transferee. This is true whether it is made on a forged instrument or by mistake for any reason. This prevents an opening up of a previous transaction or series of transactions upon an instrument which is later discovered to have been forged or paid in error for any reason.
19B Fla. Stat. Ann. § 673.3-418 (1966) ((citing Sam G. Harrison, Jr., Florida Code Comments) (quoting Florida Study and Comments on the Uniform Commercial Code, Florida Legislative Council, 1965)).
Florida case law has established that Sun Bank's right to charge back Merrill Lynch's account was limited to the midnight deadline or within a longer reasonable time prior to final settlement. See Ratner v. Central Nat'l Bank of Miami, 414 So.2d 210 (Fla. 3rd DCA), review denied, 424 So.2d 762 (Fla. 1982). In Ratner, when a bank was unable to collect from a Mastercharge Center on drafts because a business employee forged the drafts, the bank attempted to charge back the business's account. Although the dispute focused on Ratner's individual liability, the court specifically set out the preconditions of the charge back remedy in section 674.212. Footnote 2 of the opinion states:
The right to charge back under Section 674-212 exists only if (a) "by its midnight deadline or within a longer reasonable time after it [collecting bank] learns the facts it returns the item or sends notification of the facts," or (b) there has been no final settlement of the item.
Ratner, 414 So.2d at 213. See also Heumann v. United Nat'l Bank of Dadeland, 287 So.2d 99 (Fla. 3rd DCA 1973) (holding that charge back was permitted where credit extended on a check was provisional and not final). Here, because final settlement occurred on March 16, 1988, over a year prior to Sun Bank's debiting of Merrill Lynch's account, Sun Bank was barred from charging back.
Sun Bank also cites Henry J. Bailey and Richard B. Hagedorn, Brady on Bank Checks, 24.3 (7th ed. 1992) for the proposition that a bank may charge back a customer's account "even where a check has been paid by the payor bank, when it was later discovered that the payee's endorsement has been forged." Id. at 24-7 to -8. However, a careful reading of the commentary reveals that in the two cases cited for that proposition, merely provisional settlement had occurred. See Brannon v. First Nat'l Bank of Atlanta, 137 Ga. App. 275, 223 S.E.2d 473 (1976) (holding that bank could charge back its customer's account when credit given was provisional); Franzitta v. Chase Manhattan Bank, 26 UCC Rep. Serv. 985, 1979 WL 30077 (N.Y. Civ. Ct. 1979) (concluding that where payment was provisional, collecting *282 bank could revoke settlement and charge back customer's account).
Cases from other jurisdictions also recognize that a bank's right to charge back a customer's account terminates upon final settlement. For example, in 622 West 113th Street Corp. v. Chemical Bank New York Trust Co., 52 Misc.2d 444, 276 N.Y.S.2d 85 (N.Y. Civ. Ct. 1966), 622 West 113th Street Corporation sued the bank, alleging the bank deducted funds from its account without authorization. The corporation had deposited a welfare check endorsed by a person claiming to be Shirley Gates into its account at Chemical Bank. Six months later, the bank deducted the amount of the check from the corporation's account claiming it had been notified by the welfare department that the endorsement was a forgery. The court determined the bank's actions were improper because final settlement occurred. The court stated a bank cannot "unilaterally deduct sums from the amount credited to a depositor. After final settlement, and the charging of the amount of the check against the drawer's account, a voluntary refund by the collecting bank is at its own peril." Id. 276 N.Y.S.2d at 89. The court further elaborated on the bank's inability to charge back:
The Defendant bank here attempted to invoke the charge back procedure upon notification of the forged endorsement by the drawee bank, but there is one all-important difference here  this came six months after the initial deposit of the check by plaintiff, and long after final settlement of the item... . Once a final settlement has taken place, the collecting bank is no longer an agent, but has been credited with ownership of the proceeds of the item, and a debtor-creditor relationship with its customer ensues... . The bank cannot then unilaterally deduct sums from the amount credited to a depositor. After final settlement, and the charging of the amount of the check against the drawer's account, a voluntary refund by the collecting bank is at its own peril, for there are defenses it could interpose to resist payment... . The mere assertion of a claim to any part of a deposit does not permit a bank on its own to recognize the validity of that claim.
Id. at 88-89 (citations omitted). Although in 622 West 113th Street Corp., the bank ultimately prevailed on appeal, it did so only because the forgery issue had been tried and resolved in the bank's favor below. Sub judice, Merrill Lynch attacked the validity of Sun Bank's actions prior to any trial on the merits.
Likewise, in Boggs v. Citizens Bank and Trust Co. of Md., 32 Md. App. 500, 363 A.2d 247 (Md. Ct. Spec. App. 1976), the court recognized that, after final settlement, a bank is not authorized to unilaterally charge back a customer's account. In Boggs, a bank customer sued her bank alleging wrongful dishonor after the bank placed a hold on her account causing other checks to "bounce." The bank placed the hold because it received an affidavit stating that a check for $580.80 deposited in her account seven months earlier contained a forged endorsement. The trial court directed a verdict in the bank's favor because the bank itself was charged the amount of the check by the intermediate bank, so it felt the bank had "every legal right to charge back." Id. 363 A.2d at 250. Nevertheless, the appellate court reversed, basing its holding on section 4-212[5] of the Uniform Commercial Code. The court noted that
the ... check has been finally settled and paid long before the intermediate bank called for a refund from the collecting appellee bank. The fact that the appellee bank acceded to the intermediate bank's request to refund the $580.80 did not give the appellee bank the right unilaterally to charge back to Mrs. Boggs' account the amount it had so refunded or to place a `hold' on her account. Any such right terminated when the payor bank made final settlement seven months before.
Id.
However, Sun Bank is not without a remedy. Although it is precluded from charging back, Sun Bank may still assert a breach of transfer warranty claim against Merrill Lynch under section 674.207, Florida *283 Statutes (1991).[6] As the court in 622 West 113th Street Corp. recognized:
The final settlement of a deposited item then, while terminating the collecting bank's right of charge-back ... does not in any way preclude the bank from pursuing its remedies by way of a plenary suit, in order to hold the depositor on its endorsement and the warranties connected therewith. .. . In such an action, the depositor could rely upon the presumption of genuineness, and it would be incumbent upon the bank to produce first-hand probative proof as to any claimed forgery.
622 West 113th Street Corp., 276 N.Y.S.2d at 88-89 (citations omitted).
Sun Bank next argues that Florida Statutes section 674.406 permits a customer to make a claim upon a drawee bank for forged or unauthorized signatures within three years after receiving its statement containing the forged or unauthorized signatures. It is true that sub judice, the drawer and the drawee bank (C & S Bank) made a claim within the three year time period. However, Sun Bank's argument lacks merit because section 674.406 allows a claim to be made; it does not authorize the collecting bank to take action by removing funds from a customer's account.
Although Sun Bank admits the case is not directly on point, it asserts the ruling in Landrum v. Security National Bank, 104 N.M. 55, 716 P.2d 246 (App. 1985), cert. quashed, 103 N.M. 798, 715 P.2d 71 (1986) should apply to this case. In Landrum, a bank placed a temporary "hold" on a customer's account after it received notice that a check deposited in the account contained a forged endorsement. The hold caused other checks written by the customer to bounce. The court held that New Mexico's adverse claim statute did not apply to forged endorsement claims and the reasonableness of the bank's actions was a question for the jury.
However, the facts in Landrum are clearly distinguishable from the present case. In Landrum, the bank merely placed a temporary hold on its customer's account which lasted only eleven days, whereas in this case, a charge back occurred which is still in effect almost four and one half years later. Secondly, a bank supervisor in Landrum stated that the bank would not charge back Landrum's account without his permission. Here, Sun Bank acted without even notifying Merrill Lynch of its intentions. Most importantly, when Landrum asserted that the bank's actions violated section 55-4-212,[7] the court stated "this argument overlooks the undisputed testimony that a charge-back did not occur." Id. at 57, 716 P.2d at 248. As such, the court held section 55-4-212 inapplicable to the Landrum case.
Finally, we reject Sun Bank's contention that genuine issues of material fact exist precluding summary judgment. Specifically, Sun Bank asserts the issue of whether Berry's signature is authorized is significant. It argues that, if the existence of a forged or unauthorized signature is immaterial, then section 674.207, Florida Statutes (1991) regarding transfer warranties is meaningless. We find that while questions regarding the unauthorized endorsement may be material to a suit on a warranty claim, they are not material to the issue of whether Sun Bank could, unilaterally and without notice, charge back Merrill Lynch's account. Thus, no genuine issues of material fact remain, and the summary judgment granted below is affirmed.
AFFIRMED.
PETERSON and GRIFFIN, JJ., concur.
NOTES
[1] Although it is unclear from the record, it appears that C & S Bank loaned Cosmopolitan $60,000 to purchase computer equipment from PCS. When Cosmopolitan defaulted on its loan payments, C & S Bank attempted to repossess the computer equipment. C & S Bank then discovered the loan had not been used to purchase equipment from PCS. They traced the endorsements on the cancelled check and contacted Sun Bank to collect the $60,000.
[2] Effective January 1, 1993, section 674.212 was amended and transferred to section 674.2141. See ch. 92-82, § 32, at 670, Laws of Fla. The amendment does not affect our decision.
[3] Section 674.213(1), Florida Statutes (1991) states:

An item is finally paid by a payor bank when the bank has first done any of the following:
(a) Paid the item in cash;
(b) Settled for the item without having the right to revoke the settlement under statute, clearing house rule, or agreement.
(c) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing-house rule, or agreement.
Sun Bank admits that Merrill Lynch received final settlement payment on March 16, 1988.
[4] Effective January 1, 1993, this section was repealed by Ch. 92-82, § 1, at 631, Laws of Fla. While this action had the effect of eliminating the comment from Florida Statutes Annotated, as previously noted, the same result is reached pursuant to section 674.213(1).
[5] This section is the U.C.C.'s counterpart to section 674.212 of the Florida Statutes.
[6] Section 674.207, Florida Statutes (1991) provides that when a customer or collecting bank receives payment for an item, the customer or collecting bank warrants to the payor bank that it has good title or is permitted to receive payment, it is unaware that the signature is unauthorized, and the item has not been materially altered.
[7] New Mexico's equivalent to section 674.212, Florida Statutes (1991).