MAYOR AND CITY COUNCIL OF BALTIMORE et al.
*v.* EMPLOYERS' ASSOCIATION OF
MARYLAND, INC., et al.
[No. 104, October Term, 1931.]

*Decided March 3rd, 1932.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Allen A. Davis, Assistant City Solicitor,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellants.

*J. Purdon Wright,* for the appellees.

126

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrer of the Mayor and City Council of Baltimore to a taxpayer's second amended bill of complaint to enjoin the enforcement of an order of the board of estimates of Baltimore City, adopting a wage scale for municipal contracts. The bill of complaint was filed by a large number of persons representing themselves to be citizens, residents, and taxpayers of the City of Baltimore, many of whom are "architects, general contractors and builders, who from time to time contract for, engage in and perform most of the important building work of the City of Baltimore, including municipal construction work." The bill alleges that on May 13th, 1929, the Mayor of Baltimore City appointed a committee to advise him as to the meaning of the phrase "current rate of per diem wages in the locality where the work is performed," as contained in section 516 of the Baltimore City Charter, 1927 Edition (Act of 1910, chap. 94, sec. 2, Code of Public Local Laws, art. 4, sec. 516).

In pursuance of their appointment, the committee, on December 27th, 1929, filed a report with the Mayor, wherein was set out in detail a scale of wages for foremen, mechanics, and helpers, which it recommended "that the city should regard as the 'current rate per diem wages in the locality' less than which it shall not pay for work done by it or in its behalf," and recommended "that the foregoing rates shall be in effect until June 30th, 1930, and that they shall thereafter be renewed or modified for a term of one year, as may be determined by the Mayor of Baltimore." The report was adopted by the board of estimates June 3rd, 1930, effective from July 1st, 1930, to December 31st, 1930, and the scale continued from time to time until December 31st, 1931. On August 11th, 1930, an order was issued by the building engineer of Baltimore, warning all contractors doing work for the City of Baltimore that they would be required to pay their employees the rates of wages recommended by the "current rate wage arbitration committee."

The prayers of the bill are to restrain (a) the public

improvement commission, the board of awards, the department of public works, the chief engineer, the building engineer, and the Mayor and City Council of Baltimore, from carrying into effect the resolution of the board of estimates, adopting the schedule of wages so recommended; (b) to restrain the public improvement commission and the board of awards from requiring contractors or subcontractors to estimate and/or pay the scale of wages so prescribed in the execution of any contracts for any public work in the City of Baltimore; and (c), to restrain the defendants from carrying into effect the minimum wage scale so recommended by the committee and adopted by the board of estimates.

The defendants demurred generally to the bill of complaint, and assigned nine reasons why the bill should not be entertained, but, as they are to the effect that the adoption of a minimum wage scale for contractors on public work in Baltimore is valid, and that the plaintiffs show no special damage, it is not necessary to here set out the grounds of demurrer in detail.

The only provision of the Charter of Baltimore involved in this controversy, and the one that gives or does not give the city or any of its officers or agencies the power to fix a minimum wage scale for contractors and subcontarctors contracting with the city for public work, is Act of 1910, ch. 94 (Code of Public Local Laws, art. 4, sec. 516) which reads: "That eight hours shall constitute a day's work for all laborers, workmen or mechanics who may be employed by or on behalf of the Mayor and City Council of Baltimore, except in cases of extraordinary emergency which may arise in time of war or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life; provided, that in all such cases the laborer, workman or mechanic * * * shall be paid on the basis of eight hours constituting a day's work; provided further, that the rate of *per diem* wages paid to laborers, workmen or mechanics employed directly by the Mayor and City Council of Baltimore shall not be less than two dollars *per diem;* provided further that not less than the current

rate of *per diem* wages in the locality where the work is performed shall be paid to laborers, workmen or mechanics employed by contractors or subcontractors in the execution of any contract or contracts, in any public work within the City of Baltimore."

The statute, a construction of which is now asked, has been before this court on three former occasions, but the questions then presented did not involve the right of the city to insert a wage scale in contracts with those contracting to do public work. In *Sweeten v. State,* 122 Md. 634, 90 A. 180, and in *Elkan v. State,* 122 Md. 642, 90 A. 183, affirmed by memorandum decision in 239 U. S. 634, 36 S. Ct. 221, 60 L. Ed. 478, the defendants (appellants) were indicted for violation of the eight-hour law and minimum wage provisions of the statute. In the third case, *Ruark v. International Union of Engineers,* 157 Md. 576, 146 A. 797, an injunction was prayed by the plaintiffs, a labor union, and certain citizens and taxpayers, to restrain the appellants, contractors, from requiring or permitting any of their workmen to work more than eight hours a day in the performance or execution of contracts between them and the Mayor and City Council of Baltimore. In the *Ruark* case it was declared that the act was constitutional, in that the wages or market value of labor in the"locality" as designated in the statute was capable of ascertainment, and not so indefinite, vague, and uncertain as to amount to a denial of due process to one charged with its violation, as held by the Supreme Court of the United States in *Connally v. General Construction Company,* 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322, the statute there construed being state-wide in its application, while in this case the "locality" is confined to the limits of Baltimore City. *Campbell v. New York City,* 244 N. Y. 317, 155 N. E. 628. In the *Ruark* case it was held that the statute could not be enforced by injunction, and that, its violation being a misdemeanor punishable by fine, recourse could only be had to the processes of the criminal courts against those so charged, and that, the plaintiffs having shown no special

damage not suffered by the public generally, they could not maintain their suit.

It is provided by section 516 of the City Charter that contractors and subcontractors, in the execution of any contract or contracts in any public work within the City of Baltimore, shall pay to their laborers, workmen, or mechanics so engaged by them not less than the current rate of *per diem* wages in the locality where the work is performed, and by section 516B is prescribed the penalty they shall pay for the violation of the provisions of section 516, and, as will be seen from the *Sweeten* and *Elkan* cases, this coercive measure has been applied. The city, however, goes further, and assumes the power which it contends is implied from the statute, and undertakes to establish a scale of wages to be incorporated in every contract for public work, as though this would meet the requirements of the statute. This action of the city is on the theory that, if every contractor paid the scale so adopted, he would be freed from the danger and risk of prosecution for his failure to observe the terms of the statue; in fact, that such compliance would be an observance of the statute. The report of the committee, filed as an exhibit to the bill, shows that the scale is a compromise between the various rates of wages paid in Baltimore, in the many trades named, to union and non-union workmen. Suppose, then, that some informer, who by section 516B is entitled to half the fine imposed, should swear out a warrant for a contractor—would evidence that he had complied with the scale entitle him to his discharge? It would not even be evidence. The appellants cite as authority for their action the case of *Campbell v. New York City,* 244 N. Y. 317, 155 N. E. 628, in which the statute is similar in its penal provisions to ours, but it requires the insertion, in all contracts for public works, of the provisions of the statute, which also provides for a method of ascertainment of wages in the "locality within the state," which is not provided for in the Maryland statute. In *Frame v. Felix,* 167 Pa. 47, 31 A. 375, it was decided that the requirement, in specifications, for a wage rate fixed by a water board was invalid and without authority.

It is not pretended by the appellants that there is any direct authority in the City Charter for the unofficial action of the current rate wage arbitration committee in preparing a schedule, nor of the board of estimates in adopting it and requiring contractors to accept it, but it is contended that authority for the action of the board of estimates is fairly to be implied from the provisions of the statute. The scope of the power of a municipality was so clearly stated by the chancellor that his language is here quoted, as follows:

"The law is clear that the municipalities in general, possess and can exercise powers granted in express words; 'powers necessarily or fairly implied in or incident to the powers essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.' *Dillon on Municipal Corporations* (4th Ed.), p. 145, sec. 89. The same authority declares that 'any reasonable, fair doubt concerning the existence of such power is resolved against the corporation and the power is denied by the courts' (page 146). 'Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract or incur any liability not authorized thereby, or by some legislation applicable thereto. All acts beyond the scope of the powers granted are void' (page 146)." Citing *Rossberg v. State,* 111 Md. 394, 74 A. 581; *Rushe v. Hyattsville,* 116 Md. 122, 81 A. 278; *Schultz v. State,* 112 Md. 211, 76 A. 592; *Jones v. Broening,* 135 Md. 237, 108 A. 785; *St. Mary's School v. Brown,* 45 Md. 310, 330, 331.

The fact is that there is no power conferred on the city or any of its agents by the Act of 1910, chapter 94. It is a penal statute, applicable to city officials as to the eight-hour provision and to contractors and subcontractors doing public work in Baltimore as to hours and wages, and, as appears from the preamble to the act, was designed to improve the condition of employees. It is true that contracts are made with regard to the law existing at the time and place of contracting [6 *R. C. L.* 855, sec. 243; *Armour Packing Company v. United States* (C. C. A.), 153 Fed. 1, 19; *Farmers' & Merchants'*

*Bank v. Federal Reserve Bank,* 262 U. S. 649, 660, 43 S. Ct. 651, 67 L. Ed. 1157, 1164], but that does not authorize a municipal corporation to insert in its contracts provisions not authorized by the Legislature from which it derives its authority, or which are not fairly to be implied from the authority conferred.

Do the appellants have such an interest in the subject-matter of the suit as to entitle them to maintain their bill of complaint?

It is well settled that public wrongs cannot be redressed at the suit of individuals whose interest in the right asserted does not differ from that of the public generally. If it appears that the wrong complained of may result in imposing an additional burden on the taxpayer, then he, with others similarly situated, constitute a class entitled to relief, and courts of equity will take cognizance of their complaint. *Baltimore v. Gill,* 31 Md. 375. The rule, as stated by Judge Parke in the *Ruark* case, *supra,* page 589 of 157 Md., 146 A. 797, 802, is: "The special damage which the taxpayer of this division sustains in a public wrong is the prospective pecuniary loss incident to the increase in the amount of taxes he will be constrained to pay by reason of the illegal or *ultra vires* act of the municipality or other political unit. Hence the taxpayer's interest in the subject-matter is not general, but special only, because of the future individual monetary burden cast upon him or his property. The subsequent decisions have consistently maintained the rule, and have sanctioned the relief by injunction whenever it appeared that the taxpayer complaining would sustain a pecuniary loss, distinct from that of the general public, by reason of increased taxes, whether such increase resulted from an *ultra vires,* illegal, or void order, contract, ordinance, or statute in reference to an assessment of property, or to the levy, collection, expenditure, appropriation or diversion of public taxes"; and see also cases there cited. In the bill of complaint here demurred to it is charged "that the enforcement by the city of payment of the schedule of wages as set out in the above mentioned report of the committee will naturally increase the

cost of municipal work above its present level, and the inevitable consequence of such increase will be an additional burden upon the taxpayers and property owners." The report of the committee, filed as an exhibit to the bill, shows that the high and low figures were taken into consideration and a compromise schedule arranged, all of which is admitted by the demurrer to be true. Such action on the part of the city with regard to contracts for public work may also be inconsistent with the provisions of section 15 of the City Charter (Code of Public Local Laws, p. 880), which requires contracts to be awarded to the lowest responsible bidder, subject to the right to invite alternative bids. *Fuller Company v. Elderkin*, 160 Md. 660, 154 A. 548. We think the facts alleged on behalf of the taxpayers sufficient to allow them to maintain this suit.

Many contractors join in the bill on the ground that they might not be free to bid with the schedule of wages complained of in the specifications, as a condition precedent to their participating in public work in Baltimore. We do not understand that being engaged in the contracting business as such and that they may be prospective bidders on public contracts qualifies contractors to maintain a suit against the city. It is optional with them whether they bid at all (*Campbell v. New York, supra*), but it is not optional with the taxpayer whether he pays taxes.

It is also alleged that payment to contractors had been refused by the city, "unless, and until the contractors had made an affidavit that they had paid not less than the rate of wage recommended by the above mentioned committee." Manifestly this allegation does not entitle them to maintain a bill for injunction. If the city owes them anything on account of their contracts, they can sue at law to recover, as they could for any other debt.

Because, in the opinion of this court, the action of the committee and the adoption of its report were without authority, and the taxpayers joining in the bill can sue, the order overruling the demurrer should be affirmed.

*Order affirmed, with costs.*