ROBERT G. WETZEL *v.* ALICE H. COLLIN

[No. 3, April Term, 1936.]

*Decided May 19th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Benjamin L. Freeny,* for the appellant.

*Eugene Frederick and Henrietta D. Stonestreet,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

The Loyola Federal Savings & Loan Association filed a bill of interpleader in Circuit Court No. 2 in Baltimore City against the appellant, Robert G. Wetzel, administrator of Emma F. Wetzel, and the appellee, Alice Collin, wherein it was alleged that on February 16th, 1914, "a share account" was opened with it, then incorporated under the name of the "Loyola Perpetual Building Asso-

ciation of Baltimore City," under the name and title of "Miss Emma Collins in trust for herself and Miss Alice H. Collins, joint owners, subject to the order of either, balance at the death of either to belong to the survivor." And thereafter payments were made upon said share account until 1917, when, according to the records of the association, the name of Alice H. Collins was stricken from the share book and the account continued in the name of "Emma Collins"; "that the records of the Association do not disclose any authorization for the elimination of the name of the said Alice H. Collins, but the said account was thereafter continued in the name of Emma Collins alone until her death, which your orator is informed took place on or about June 5, 1935"; that the amount of the credit of the share account is $2,684.47; that Emma Collins had married Robert G. Wetzel, to whom letters of administration have been granted on her estate; that shortly after the death of Emma F. Wetzel demand for the deposit was made on the association by Alice H. Collins, and a like demand has also been made by Robert G. Wetzel, administrator. The association, being unable to decide between the rival claimants, prayed that they be required to interplead, and a decree of interpleader was passed directing the association to bring the money into court, and making Alice H. Collins plaintiff and Robert G. Wetzel, administrator, defendant, and, from a decree in favor of Miss Collin, Mr. Wetzel appeals. The name is Collin, but frequently, as in the bill of interpleader, miscalled Collins.

The appellee, Alice H. Collin, in her bill of complaint, alleged that for many years, including the period from 1913 to 1920, she was employed on ships sailing out of Baltimore, which necessitated long and frequent absences, and that she resided with her sister, Emma F. Collin, to whom she intrusted her savings for "safekeeping and investment," and that among them was an account opened with the Loyola Federal Savings & Loan Association in the form stated in the bill of interpleader, a fact admitted in the answer of the appellant; that the deposit

or trust fund was the property of the appellee, and never of her sister, Emma F. Collin; that, upon demand being made on the association for the money, the appellee was advised that her name had been stricken from the account, an act not authorized by her, nor done with her knowledge.

The appellant in his answer, while claiming the money was at all times his wife's, stands on the form of the deposit as originally made, as giving her the authority to transfer it to herself so long as she had access to or control over the book of deposit. In addition to this contention, the appellant also relies on the Evidence Act (Code, art. 35, sec 3), which forbids a party to the cause to testify as to any transaction had with the decedent.

The account was entered as a subscription to eight shares of stock of the association, which would be fully paid up when the deposits or payments amounted to $1,000. To all intents and purposes it was as much a savings account as if made in a savings bank. It began with a deposit of $100 on February 16th, 1914, and was fully paid up, by sixty-four deposits varying from $5 to $35, November 5th, 1917. No withdrawals were ever made by either of the sisters, and on July 1st, 1935, when the last dividend was entered, the account of $1,000 had grown to $2,684.47. When the account was opened, the entry on the passbook, rubber stamped, except for the names, was "Miss Emma Collins in trust for herself and Alice H. Collins, joint owners, subject to the order of either, at the death of either to belong to the survivor." This form of deposit has been frequently held, from *Milholland v. Whalen*, 89 Md. 212, 43 A. 43, to *Bollack v. Bollack*, 169 Md. 407, 182 A. 317, to be a trust which may be revoked, in whole or part, by either the depositor, trustee, or *cestui que trust*, during their joint lives, subject to such conditions as the contract with the bank may require, the condition usually being presentation of the passbook. The entry on the general ledger of the association was "Misses Emma and Alice H. Collins." When demand for the money was made on the association by the appellee, after

Mrs. Wetzel's death, the passbook was found in the possession of the association, and it then appeared that a line had been drawn through the name of Alice H. Collins and the stamped form of the trust crossed several times in ink, leaving only "Miss Emma Collin" undisturbed, and that on the first sheet of the general ledger the words "and Alice H." had been crossed, leaving "Misses Emma * * * Collins"; on the second sheet there was only the name "Collins"; and on the third and fourth sheets "Miss Emma Collins."

When, by whom, or at whose instance or by whose authority or direction these changes in the passbook and ledger were made, there is no evidence in the record. The nearest approach to any information is from the only one from the association testifying, an assistant secretary who went into its employ in December, 1921, and he testified that the scratching or crossing out of everything except the name of Emma F. Collin had already been done. He did not know when or how the passbook got into the possession of the association. As the entry appeared originally on the passbook and the association's ledger, the money or deposit was payable at the order of either the nominal trustee, Emma F. Wetzel, or the *cestui que trust,* Alice H. Collin. *Whalen v. Milholland,* 89 Md. 199, 43 A. 45; and *Milholland v. Whalen,* 89 Md. 212, 43 A. 43; *Ghingher v. Fanseen,* 166 Md. 519, 172 A. 75; *Bollack v. Bollack,* 169 Md. 407, 182 A. 317, and the cases cited in the two last named. On these authorities there can be no doubt of the right of either trustee or *cestui que trust* to so change the account as to appropriate to her own use all the money on deposit in this account, or to transfer it from the names of both into her own name, regardless of whose money it was. On the authority of the cases just cited, if the account had been undisturbed, it would be the absolute property of the appellee by right of her survivorship. If one puts it in the power of another to so dispose of her money, the courts have no way to protect her against the betrayal of her confidence or folly, whichever you may call it. The appellee testified

that she had been regularly employed at good wages, while her sister, appellant's decedent, had only been employed part of each year at a wage so small that it could not have maintained her, that she gave all of her money to the sister, Mrs. Wetzel, and that out of the surplus, after the payment of their living costs, the balance was deposited, some of it to the account before us, the balance to other accounts; that there were several bank books in a bureau in the appellee's room, available to either, which she assumed were always kept there, and that it was not until after the sister's death that she discovered that the Loyola Association book was missing; and that, as a result of her inquiry, the passbook was found in its possession with the unexplained and unaccounted for scratches or erasures of everything as to its identity except the name of Emma F. Wetzel. On objection, all of the appellee's testimony was stricken out as inadmissible under the Evidence Act (Code, art. 35, sec. 3), as to transactions had with the decedent, but the appellant now complains that the chancellor decided the case against him on the excluded evidence as the foundation of the decision. We do not agree with this contention. The chancellor, in our opinion, decided the ownership of the fund in favor of the appellee for either of two reasons; one, that there had been no change in the account; the other, that there was no proof that either of the two parties had authorized it.

The decree of the chancellor on the bill of interpleader required the parties to this appeal to interplead, making the appellee plaintiff and the appellant defendant, but this decree did not, nor could it, put the burden of proof on her, and this has been so declared by this court in *Scott v. Marden*, 153 Md. 14, 137 A. 523, where it was said: " 'The defendant claimants are in a position similar to that of plaintiffs in possessory actions in general, where recovery must rest on their own title rather than on the weakness of their adversary's title.' 15 *R. C. L.* 233; *Conway v. Caswell*, 121 Ga. 254, 48 S. E. 956, 2 Ann. Cas. 269." The appellant's contention is that the

passbook in its present condition, without any other evidence, proves the title of the appellant, without any other evidence as to how, why, or when the alteration, on the same passbook, of the original conceded trust form took place, and he relies on the opinion of this court in *Sturgis v. Citizens' National Bank,* 152 Md. 654, 656, 137 A. 378, 380, where it was said: "The objection to the gift for informality in its creation we have not found well taken. It does not seem essential to the change of the title to the deposit that the depositor go through the form of withdrawing and redepositing it by checks. * * * The depositor here had full power to make the change, clearly intended that it should be made as it was made, and so expressed himself; and checks could have added nothing but written evidence of the transaction with which both parties were satisfied as it was." In that case, J. T. M. Sturgis made a deposit in the Citizens National Bank of Pocomoke in the names of himself and "M. B. Foulke, in trust for both, joint owners, subject to the order of John T. M. Sturgis, the balance at the death of either to go to the survivor," which was so entered on the depositor's passbook and the bank ledger. The bank became doubtful of the effectiveness of this form of deposit, and sent for Mr. Sturgis, who consented to a change in form, which was made on the ledger only by substituting for the words "subject to the order of John T. M. Sturgis" the words "subject to the check of either." No change was made on the passbook, which was left with the bank among the donor's papers. What was decided in that case was that the deposit was a trust of personalty created by parol for the benefit of the donor's niece, and that it could be so done. The difference between the *Sturgis* case and this is that in the former the change was shown to have been made by the donor, and that what was done by the bank was with his consent and approval. Here it is conceded that the deposit was in the usual trust form, and no one appears in the case to show by whose authority or direction the changes by crossing out of any of the entries on either passbook or ledger were made.

The omission or want of any proof that the change was made by the authority of any one having the power or authority so to do was decisive with the chancellor, and is so with us.

*Decree affirmed, with costs.*

BOND, C. J., and PARKE and JOHNSON, JJ., dissent.