DAVIS *v.* JACKSON.

5-2186                                                  341 S. W. 2d 762

Opinion delivered January 9, 1961.

*Carl L. Hunter, Kirsch, Cathey & Brown,* for appellant.

*Gus R. Camp,* for appellee.

CARLETON HARRIS, Chief Justice. Don L. Davis, a widower, on February 7, 1957, deposited $10,000 with the Piggott Federal Savings and Loan Association, receiving a Savings Share Account certificate. This certificate was issued in the name "Don L. Davis or Patricia Jackson (a granddaughter)." In October, 1957, Davis married Lucy Copeland Davis, appellant herein. On January 3, 1958, Davis presented his savings book to the Association, stated that he had married, and would like to change the account to show his wife's name, Lucy Copeland Davis, rather than the name of the granddaughter. In compliance therewith, the certificate was changed by striking the words "Patricia Jackson (a granddaughter)", and inserting in lieu thereof, the words, "Lucy Copeland Davis." Davis died in June, 1958, leaving a will, in which appellant was named executrix. No withdrawals were ever made from the account after it was originally opened in 1957. Davis retained possession of the deposit book at all times. Subsequent to his death, appellee instituted suit against the widow (both individually and in her capacity as executrix), and against the Association, seeking to have the account declared her sole and absolute property. On hearing, the court held that a joint tenancy had been created in the first instance, and that same "cannot be revoked at the pleasure of either of the depositors * * *"; that it was the intention of Davis at the time of making the deposit, to create a joint tenancy with right of survivorship, and further, "That the testimony is insufficient to show that there was not a com-

pleted gift.'' In accordance with these findings, the court declared and held appellee to be entitled to the entire deposit, directed the Piggott Federal Savings and Loan Association to pay the deposit, together with all accruals thereto, to Patricia Jackson, and ordered appellant to deliver the pass book to appellee. From such decree, comes this appeal. For reversal, appellant asserts four points, but we think point three is controlling. Accordingly, we will only discuss that point, together with the two contentions relied upon by appellee to sustain the Chancellor's holding.

The pertinent provisions of Section 67-820, subsection (b), Ark. Stats. Anno. (1957 Replacement), are as follows:

''Any Building and Loan Association or Federal Savings and Loan Association may issue shares, share accounts, or accounts in the joint names of two (2) or more persons or their survivor, in which event any of such persons who shall first act shall have power to act in all matters related to such shares, share accounts, or accounts whether the other person or persons named in such shares, share accounts, or accounts be living or not. Such a joint account shall create a single membership in any such association. No shares, share accounts, or accounts shall be issued to tenants in common. The repurchase or redemption value of shares, share accounts, or accounts issued in joint names, and dividends thereon, or other rights relating thereto, may be paid or delivered, in whole or in part, to any of such persons who shall first act, whether the other person or persons be living or not. The payment or delivery to any such person, or a receipt or acquittance signed by any such person, to whom any such payment or any such delivery of rights is made, shall be a valid and sufficient release and discharge of any such association for the payment or delivery so made.''

Appellee asserts that this section is applicable to accounts of the nature here involved, and that the case of *Ferrell, Administratrix* v. *Holland,* 205

Ark. 523, 169 S. W. 2d 643, wherein this Court held a joint tenancy to have been created, is controlling in the present litigation. We agree that the section applies, but we do not agree that the *Ferrell* case has any application. The holding in that case was predicated upon the aforementioned statute, and the provisions of the certificate issued,[1] together with the intent, as shown by the evidence, to create a joint tenancy. As this Court stated:

"The above statute applies here; and from the evidence in this case we hold that Mr. S. I. Ferrell and Dr. D. T. Holland intended to, and did, create a joint tenancy with right of survivorship when they applied for and received the certificate here involved."

Further, from the Opinion:

"We hold that there was created a joint tenancy with right of survivorship when Mr. S. I. Ferrell and Dr. D. T. Holland signed the application card to the loan association and received the certificate, and, *the certificate never having been changed,*[2] it goes to Dr. Holland as the survivor."

A substantial difference in that case, and the present one, is at once apparent, for here, *the certificate was changed*. Appellee takes the view that once Mrs. Jackson's name was placed on the certificate, she had a vested interest in the property. This position cannot be maintained, for the statute itself precludes such a result. Very clearly, such statute provides:

---

[1] The applications for the share account in both the *Ferrell* case, and the present case, were the same, but the certificates issued were vastly different. In the former case, the certificate reads as follows: "This is to certify that S. I. Ferrell, Desha, Ark., and Dr. D. T. Holland, Newbern, Tenn., as joint tenants with right of survivorship, and not as tenants in common, is a member of the Batesville Federal Savings & Loan Association and holds a five thousand dollars investment share account of said association, subject to its charter and by-laws and to the laws of the United States of America." In the present case, the original certificate reads: "This certifies that Don L. Davis or Patricia Jackson (a granddaughter) is a member of Piggott Federal Savings and Loan Association and holds a Savings Share Account of said Association, subject to its charter and by-laws and to the Laws of the United States of America."

[2] Emphasis supplied.

"\* \* \* any of such persons *who shall first act*[3] shall have power to act in all matters related to such shares, share accounts, or accounts whether the other person or persons named in such shares, share accounts, or accounts be living or not."

Mr. Davis did act, and he had every legal right to do so.

It is also contended, to make any sort of a change, it would have been necessary for Davis to draw the money out and re-open another account, rather than merely have the name changed on the certificate. This, we think, would have been superfluous. Equity regards substance rather than form. The circumstances clearly reflect the end result that Davis desired. It might also be added that the evidence clearly establishes that Davis had no intention of creating a joint tenancy when opening his account. According to Mrs. Wilma Underwood and John Ed Lingle, employees of the Federal Savings and Loan Association who were present when the account was originally opened, the following facts were shown: Davis desired to open an account in his own name, but was advised by one of the corporation directors that it was customary to have two names on the account. According to Lingle, Davis mentioned the name of one of his neighbors, a Mr. Montgomery, but it was suggested that would be asking a neighbor to assume a considerable amount of responsibility. The director inquired about relatives, and Davis mentioned his granddaughter. According to Mrs. Underwood, Davis was assured it would not be possible for the person whose name appeared on the account with him to draw on it except after his death, and only if she had possession of the pass book. After some discussion, he decided to place his granddaughter's name on the account, and was assured that if he desired to make any change, it would only be necessary that he return with the book, and give the Association the necessary information. We are not here concerned with the correctness of the advice given to Davis, but mention this evidence only for its pertinency to the question of intent.

---

[3] Emphasis supplied.

Appellee asserts, "In any event, there was certainly a completed gift to the granddaughter." We feel there is but little need to add to what has already been said. A gift is a voluntary transfer of property, without valuable consideration, to another. In the very nature of a gift, the donor ceases to exercise control over it. The testimony, heretofore referred to, establishes that Davis had no intention of giving the money, represented by the share, to anyone, and he likewise retained possession of the pass book. Appellee calls attention to a letter sent to Mrs. Jackson, by Davis, and enclosing an application card for her signature, following the original opening of the account with the Savings and Loan Association. The letter directs that appellee sign the card, "so then when you come down here they would know you"; however, the opening line of the letter is, "I wish you would sign this card to identify you just in case anything happens to me." We think it clear that the first statement referred to Mrs. Jackson's "coming down" after his death. The evidence falls far short of establishing a gift.

For the purposes of this appeal, it is not necessary that we determine whether the fund, evidenced by the certificate, belongs to appellant individually or in her capacity as executrix. The decree is reversed, and the cause remanded with directions to enter a decree not inconsistent with this opinion.

Reversed and remanded.