**T & L LEASING CORPORATION**

v.

**GENERAL ELECTRIC CREDIT CORPORATION.**

**Civ. A. No. 80–0038.**

United States District Court,
E. D. Pennsylvania,
Civil Division.

June 19, 1981.

Arnold Levin, Philadelphia, Pa., for plaintiff.

M. Patricia Carroll, Philadelphia, Pa., for defendant.

### MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff, T & L Leasing Corporation (T & L), an equipment leasing corporation incorporated under the laws of the State of New Jersey, brought this diversity action against defendant General Electric Credit Corporation (GECC), a commercial and industrial leasing and financing corporation which does business in the Commonwealth of Pennsylvania.[1] Plaintiff seeks to recover an alleged overpayment of $11,739.36, plus legal interest thereon, which was paid to defendant as part of a prepayment agreement in satisfaction of an installment sales contract and note. Each party has moved for summary judgment.

On March 23, 1978, plaintiff entered into a conditional sales contract and a note with Modern Handling Equipment Company, Inc. for the installment sale to plaintiff of nine forklift trucks. Plaintiff paid $18,-622.80 upon execution of the contract and was to pay the remaining time balance of $226,402.20 (principal sum of $167,605.20 with 7% per annum interest) in sixty monthly installments of $3,733.00 each. Subsequently, the contract and the note were assigned by Modern Handling Equipment Company, Inc. to the defendant GECC.

In December, 1978, some eight months after the initial undertaking, plaintiff got in touch with defendant with regard to an early payment of the remaining portion of the debt. After being given a payoff figure by defendant of $181,250.65, plaintiff paid this amount to defendant in full satisfaction of the debt. Subsequent to this payment, plaintiff requested of defendant a breakdown of the payoff amount. On April 11, 1979, plaintiff received the following breakdown which indicated that $11,739.36 of the payoff figure was attributed to "[n]ormal acquisition charges" for early payment:

| | | |
|---|---|---|
| 1. | The Total Balance Due amounted to | $207,535.35 |
| 2. | A refund base i.e. total leasing charges was determined, this amounted to | 58,697.00 |
| 3. | Standard refund rate chart for prepayment in full after 8 months of a 60 months lease contract indicated a refund percentage of 75.30%, which when multiplied by Item 2 ($58,697.) amounted to | 44,198.84 |
| 4. | Normal acquisition charges of $11,739.36 were deducted from Item 3 leaving an applicable net refund amount of | 32,459.48 |
| 5. | Item 1 minus Item 4 equals | 175,075.87 |
| 6. | Charges for late payment for installments of rental amounted to | 1,320.69 |
| 7. | Refund applicable to rate participation actually paid by General Electric Credit Corp. to supplier (Total: $6,446.34) | 4,854.09 |
| 8. | Final Prepayment-In-Full amount (Item 5 plus Items 6 & 7) | 181,250.65 |

1. This Memorandum and the accompanying Order are based upon the jurisdictionally essential factual assumption that GECC is incorporated in a state other than New Jersey, the state of incorporation of plaintiff, T & L. The record made thus far is, however, silent with respect to where GECC is incorporated. Plaintiff will be allowed one week from the date of filing of this Memorandum and accompanying Order to file an amended complaint duly perfecting its jurisdictional allegations. Inability or failure to file a timely amended complaint will lead to dismissal for lack of subject-matter jurisdiction.

(Plaintiff Exhibit "D")

Thereafter, plaintiff brought this action to recover the $11,739.36 acquisition charge plus legal interest thereon. As to each motion for summary judgment, the court must consider whether the moving party has demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). Although both parties, in their respective motions, state that there are no outstanding issues of material fact in this case, neither party has met its burden in attempting to demonstrate this. The supporting pleadings, affidavits and depositions show confusion surrounding the validity and meaning of the oral prepayment agreement pursuant to which plaintiff paid defendant.

### I. Plaintiff's Motion for Summary Judgment

Both parties admit that the original written contract and note contain no provision for an acquisition charge or, indeed, for prepayment. Plaintiff seems to be claiming that the request for a payoff figure was nothing more than a request for a modification of the method of payment, and thus was limited by the principal liability remaining in the written agreement at the time of its request; since the original agreement contained no provision for an acquisition charge, the payoff amount included more than plaintiff's proper obligation. However, the materials submitted by plaintiff in support of its motion fail to demonstrate that there was an overpayment, i.e., that the negotiation about and the terms of the oral agreement precluded a payoff figure higher than the principal liability.[2] Absent such a factual demonstration, there is no legal rule which precludes such a result; if the method of payment stipulated in writing could be orally modified, it would appear that the amount required to extinguish the debt could be modified in the same way.[3]

In short, the record as it stands does not suffice to resolve the question whether the payoff amount was to be net of an acquisition charge. The trier of fact must look to the surrounding circumstances and the course of dealing between the parties, as well as what was said and done, in order to understand what each party intended in

---

**2.** Plaintiff places chief reliance on the affidavit of T & L Treasurer, Bernard Gelman, who stated in this regard that "my office personally requested of the defendant a payoff figure for the entire obligation then due and owing" (Gelman affidavit, p. 2); but even these words are open to more than one interpretation. Money voluntarily paid to one entitled to receive it cannot be recovered back even though made under a mistake of fact. See *Wilson & Company, Inc. v. Douredoure, et al.*, 154 F.2d 442 (3d Cir. 1946); *United States v. Hart*, 90 F.2d 987 (3d Cir. 1937). On plaintiff's evidence of record, whether plaintiff's payment was an overpayment or a payment to which defendant was entitled remains an open question.

**3.** Defendant argues that the oral agreement could not have been a mere modification of the written contract since that contract included a clause disallowing any non-written modification; the oral agreement was thus a novation, i.e., a new contract between the parties, which could not possibly have been limited by the terms of the written contract. See *Yoder v. T.F. Scholes*, 404 Pa. 242, 173 A.2d 120 (1961). First, Pennsylvania law does not support defendant's contention that the agreement must have been a novation due to the no-non-written-modification clause. "The most iron-clad writing can always be cut into by the acetylene torch of parol modification.... The hand that pens a writing may not gag the mouths of the assenting parties." *Wagner v. Graziano Construction Company*, 390 Pa. 445, 136 A.2d 82, 83–4 (1957). Furthermore, waiver of no-non-written-modification clauses is also possible in contracts governed by the Uniform Commercial Code. See 13 Pa.C.S.A. § 2209, parts (d) and (e); *Universal Builders v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d 10 (1968). More importantly, whether the agreement was a modification or a novation does not matter in the resolution of these motions since neither theory sheds any light on the question of specific communications or understandings between the parties as to limitations on the payoff figure.

Defendant also argues that plaintiff wrongly uses the remaining principal liability as the limit of its contractual obligation, since the contract itself speaks only of a time balance and not of the principal and interest. This also is irrelevant in deciding the current motions since the parol modification (or novation) arguably could have involved the substitution of any figure as the payoff amount.

making the agreement. *See Westinghouse Electric Company v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656 (1967); *Solomon v. Luria*, 213 Pa.Super. 87, 246 A.2d 435 (1968).

## II. *Defendant's Motion for Summary Judgment*

■ Defendant likewise fails to meet its burden in support of its motion for summary judgment. Defendant provides an affidavit by GECC District Manager Stephen Smith, and an internal office memorandum available to GECC employees, which explain the procedure for assessment of an acquisition charge. These materials, however, are not sufficient to establish that there was either a course of dealing between these particular parties or a usage of trade as a whole so compelling that the court must interpret the oral agreement as one in which the plaintiff was or should have been aware of the acquisition charge. *See* 13 Pa.C.S.A. § 1205(c). Defendant's materials tend to show only that assessment of an acquisition charge is a usual GECC practice. There is no indication of any "sequence of previous conduct between the parties" to meet the Uniform Commercial Code definition of "course of dealing." 13 Pa.C.S.A. § 1205(a). Furthermore, the existence and scope of trade usage must be established as facts. 13 Pa.C.S.A. § 1205(b).

### *Conclusion*

Neither party is entitled to summary judgment in its favor. "Summary judgment may not be granted where there is the slightest doubt as to the facts." *Tomalewski v. State Farm Life Insurance Company*, 494 F.2d 882, 884 (3d Cir. 1974). Therefore, in the accompanying Order, both motions for summary judgment are denied.