IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 9, 2019 Session

## ESTATE OF ELLA MAE HAIRE ET AL. v. SHELBY J. WEBSTER ET AL.

**Appeal by Permission from the Court of Appeals
Chancery Court for Knox County
No. 191583-2        Clarence E. Pridemore, Jr., Chancellor**

_____

### No. E2017-00066-SC-R11-CV

_____

We granted this appeal to determine whether a person listed as a joint tenant with right of survivorship on checking and savings accounts sufficiently alleged claims for relief against a bank by asserting that the bank removed his name from the accounts without his consent and breached its duty to him as a co-owner of the account by accepting forged signature cards. We conclude that the allegations of the complaint are sufficient to survive the bank's motion to dismiss because, under Tennessee law: (1) each joint tenant with right of survivorship of a multiple-party account is deemed an owner of the account; (2) all joint tenants have presumptively equal ownership of account funds; (3) a contractual relationship arises between a bank and joint tenants upon the creation of joint tenancy bank accounts; (4) contracts cannot be modified except upon consent of the parties; and (5) no statute affords banks protection from liability for removing a joint tenant's name from an account without the joint tenant's consent. Accordingly, we reverse the decision of the Court of Appeals affirming the trial court's judgment granting the bank's motion to dismiss for failure to state a claim and remand this matter to the trial court for further proceedings consistent with this decision.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Judgment of the Trial Court Vacated and Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Robin M. McNabb, Knoxville, Tennessee, for the appellants, Phillip Daniel Haire and Estate of Ella Mae Haire.

J. Michael Winchester, Knoxville, Tennessee, for the appellee, First Tennessee Bank National Association.

## OPINION

### I. Factual and Procedural Background

This appeal arises from the trial court's grant of a motion to dismiss for failure to state a claim on which relief may be granted, pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. The following facts are summaries or quotations of the allegations of the complaint, which are taken as true for purposes of this appeal.[1]

Ella Mae Haire ("Mother") and Paul Haire ("Father") were married and had five children. They held title as joint tenants with right of survivorship to real property in Knoxville, Tennessee, and to bank accounts, including a savings account and a checking account at First Tennessee Bank, N.A. ("Bank"). In the early 2000s, Mother and Father grew too aged to manage their own affairs. Thus, their eldest son, Philip Daniel Haire ("Mr. Haire"), the plaintiff in this case, assisted his parents with managing their finances. On August 1, 2005, Mother executed a durable power of attorney naming Mr. Haire as her attorney-in-fact for financial matters. Father died on April 1, 2008, and Mother became the sole owner of all the property she and Father had owned as joint tenants with right of survivorship, including the checking and savings accounts at issue in this appeal.

Mother was ninety-one years old when Father died and "incapable of managing her finances." On April 18, 2008, about three weeks after Father's death, Mother and Mr. Haire completed a new signature card for the checking account at the Bank. A year later, on October 30, 2009, Mother and Mr. Haire completed a new signature card for the savings account at the Bank. In the sections of the signature cards titled "Style of Account," Mother's and Mr. Haire's names were listed. On both signature cards, an "X" had been placed in boxes next to preprinted text reading, "Joint tenants with right of survivorship." Mother's and Mr. Haire's cursive signatures appeared on lines at the bottom of the signature cards beneath the preprinted instruction "SIGN HERE (exactly as Account is to read and as checks or withdrawals are to be signed)."

From 2008 to 2012, Mr. Haire served as Mother's primary caretaker, and during this time, Mother's health continued to decline. She no longer drove and rarely left her home. Mr. Haire hired a home health care service to visit her and attend to her personal needs, paying for the expenses related to her care with funds from certificates of deposit he and Mother also held jointly at the Bank.

---

[1] Moore-Pennoyer v. State, 515 S.W.3d 271, 273 (Tenn. 2017).

Near the beginning of 2012, due to disagreements with his younger sister, Shelby Webster, Mr. Haire "relinquished management of [Mother's] affairs" to Mrs. Webster and to his brother, Paul David Haire ("Mr. David Haire"). Mrs. Webster "lived in New Mexico and visited [Mother] a few times a year for one to two weeks at a time." Mr. David Haire and his wife lived in Knoxville.

According to the allegations of Mr. Haire's complaint, "from early 2012 until her death on November 15, 2013," Mother was "incompetent to manage her own affairs and did not possess the legal capacity to execute deeds, contracts, and other legal documents." When Mr. Haire surrendered Mother's care to his siblings, he did not discuss with anyone the savings and checking accounts he and Mother held at the Bank as joint tenants with right of survivorship, nor at any time did he sign paperwork or take any action to remove his name as a joint tenant of those accounts.

Nevertheless, a new set of signature cards was completed on June 7, 2012, for the savings and checking accounts and later processed by the Bank. Mother's name appeared in the section titled "Style of Account."[2] A box next to the preprinted text "Joint tenants with right of survivorship" was blank, but an "X" had been marked in a box next to a blank line, and the abbreviations "POD SOL" appeared on that line.[3] Mother's cursive signature and Mrs. Webster's and Mr. Haire's names appeared on lines at the bottom of the signature cards beneath the preprinted instruction "SIGN HERE (exactly as Account is to read and as checks or withdrawals are to be signed)." Next to the names of Mrs. Webster and Mr. Haire, the abbreviation "PUD" appeared.

The Bank later processed another set of signature cards that was completed on October 5, 2012. The names of Mother, Mrs. Webster, Mr. David Haire, and Mr. Haire appeared in the section titled "Style of Account."[4] The abbreviations "POA POD" appeared next to the names of Mrs. Webster, Mr. David Haire, and Mr. Haire. The box next to the preprinted phrase "Joint tenants with right of survivorship" was again blank, but an "X" appeared in the box next to the preprinted phrase "Additional authorized signer (Power of Attorney)." An "X" also appeared in the box next to the blank line, and on that line the abbreviations "POD SOL" had been typed. The cursive signatures of Mother, Mrs. Webster, and Mr. David Haire and the printed name of Mr. Haire appeared

---

[2] On the signature card for the checking account, Mr. Haire's typed name appeared beneath Mother's name, but lines were drawn through it.

[3] The signature cards use but do not define the abbreviations "POD," "PUD," "POA," and "SOL." In this context, "POD" and "PUD" likely are references to "payable on death" or "payable upon death," and "POA" likely is a reference to "power of attorney," but the record on appeal provides no contextual clues to the meaning of "SOL."

[4] The names of Mother, Mrs. Webster, and Mr. David Haire are typed onto these signature cards, but Mr. Haire's name is written in.

below the instruction "SIGN HERE (exactly as Account is to read and as checks or withdrawals are to be signed)." Next to the names of Mrs. Webster, Mr. David Haire, and Mr. Haire were the abbreviations "POA/POD." On October 8, 2012, three days after the foregoing signature cards were completed, Mother executed a durable power of attorney naming Mr. David Haire as her attorney-in-fact and naming Mrs. Webster as his successor, should he be unable to serve as attorney-in-fact.

Yet another set of signature cards was completed on November 16, 2012, and subsequently processed by the Bank. This time, the savings account signature card listed the names of Mother and Mrs. Webster in the "Style of Account" section. The box next to the preprinted text "Joint tenants with right of survivorship" had been left blank, but an "X" appeared in the box next to the blank line, and "SOL owner POD" had been written on that line. Beneath the instruction "SIGN HERE (exactly as Account is to read and as checks or withdrawals are to be signed)" were Mother's and Mrs. Webster's cursive signatures and Mrs. Webster's handwritten printed name. Next to Mrs. Webster's cursive signature was the abbreviation "POA," and next to her handwritten printed name was the abbreviation "POD."

The checking account signature card completed November 16, 2012, listed the names of Mother and Mr. David Haire in the "Style of Account" section. Next to Mr. David Haire's name were the handwritten abbreviations "POA/POD." The box next to the preprinted text "Joint Tenants with right of survivorship" was again blank, but an "X" appeared in the box next to the blank line, and on that line the abbreviations "SOL POD" appeared. Beneath the instruction "SIGN HERE (exactly as Account is to read and as checks or withdrawals are to be signed)" were Mother's and Mr. David Haire's cursive signatures and Mr. David Haire's handwritten printed name. Next to Mr. David Haire's cursive signature was the abbreviation "POA," and next to his handwritten printed name was the abbreviation "POD."

About a year later, on October 17, 2013, the final signature card for the checking account was completed and later processed by the Bank. The names of Mother, Mrs. Webster, and Mr. David Haire appeared in the section titled "Style of Account." Next to Mr. David Haire's and Mrs. Webster's names were the abbreviations "POA POD." The box next to the preprinted text "Joint tenants with right of survivorship" was still blank. An "X" appeared in the box next to the preprinted text "Additional authorized signer (Power of Attorney)" and in the box next to the preprinted blank line. On the blank line the abbreviations "POD SOL" were typed. Beneath the instruction "SIGN HERE (exactly as Account is to read and as checks or withdrawals are to be signed)" were Mother's, Mrs. Webster's, and Mr. David Haire's cursive signatures. Next to Mrs. Webster's and Mr. David Haire's signatures were the abbreviations "POA POD." Mother died on November 15, 2013, less than a month after this final signature card was completed.

After Mother's death, Mr. Haire was appointed personal representative of her estate. Mr. Haire then learned, for the first time, that he was not listed as a joint tenant with right of survivorship on the savings and checking accounts at the Bank at the time of Mother's death. He also learned that the Bank had paid the funds remaining in the savings account, approximately $129,000.00, to Mrs. Webster and had paid the balance of the checking account, approximately $11,500.00, to Mr. David Haire and Mrs. Webster.

On May 9, 2016, Mr. Haire, in his capacity as personal representative of Mother's estate and in his individual capacity, filed a lawsuit against the Bank, Mrs. Webster, Mr. David Haire, and various other individuals and entities. Mr. Haire claimed that, by removing him from the savings and checking accounts, the Bank had breached its contract with him and Mother and had engaged in actions that constituted conversion.[5] Mr. Haire attached to his complaint copies of all of the previously described signature cards.

On July 15, 2016, the Bank filed a motion to dismiss for failure to state a claim for relief, relying on Rule 12.02(6) of the Tennessee Rules of Civil Procedure. For the breach of contract claim, the Bank also argued that Mr. Haire had failed to comply with Rule 10.03 of the Tennessee Rules of Civil Procedure, which states that, when a claim is founded on a written document, a copy of the document, or its pertinent parts, must be attached to the pleading, unless one of the enumerated exceptions to Rule 10.03 applies. The Bank argued that Mr. Haire had failed to attach any document that contractually obligated the Bank to obtain Mr. Haire's consent before removing his name from the joint tenancy with right of survivorship accounts or changing the "ownership, control, or disposition of funds" of the accounts. The Bank also asserted that two statutes provided it protection from liability and doomed Mr. Haire's claims against it. First, the Bank relied on Tennessee Code Annotated section 45-2-703(a), which provides that a bank is released and discharged from liability for payment of funds if the payment is to a joint tenant of a multiple-party deposit account. Tenn. Code Ann. § 45-2-703(a) (Supp. 2018).[6] Second, the Bank relied on Tennessee Code Annotated section 45-2-707(a), which allows a bank to recognize and honor the authority of a depositor's attorney-in-fact "to operate, in whole or in part, the account of a depositor . . . until the bank receives written notice of the revocation of this authority." Tenn. Code Ann. § 45-2-707(a) (2007). The Bank claimed that it was entitled to rely on the power-of-attorney Mother had granted to Mr. David Haire on October 9, 2012.

---

[5] Mr. Haire also alleged a number of claims against other defendants, some of which related to the real property his Mother had owned, but this appeal involves only his claims against the Bank, so we confine our discussion to the facts relevant to those claims.

[6] Unless indicated otherwise, citations in this opinion are to the current version of the relevant statutes because no material differences exist between the current statutes and those in effect when the events giving rise to this appeal occurred.

Mr. Haire did not file a written response to the Bank's motion to dismiss. Instead, on October 21, 2016, just four days before the hearing on the motion, he filed a motion for leave to amend his complaint and attached the amended complaint he proposed to file.[7] In the amended complaint, Mr. Haire alleged that the Bank had breached the contracts that arose when the joint tenancy with right of survivorship accounts were established by changing the ownership of the accounts without his consent. He also alleged a negligence claim against the Bank, asserting that the Bank owed him a duty as a co-owner of the accounts and had breached that duty by accepting forged signature cards removing him as co-owner of the accounts. Finally, he alleged a claim for breach of a bailment contract. Attached to the amended complaint were copies of all of the signature cards previously described herein.[8]

At the October 24, 2016 hearing on its motion, the Bank did not object to the trial court's granting Mr. Haire's motion to amend but simply asserted that the amended complaint also failed to state a claim for relief against the Bank. Based upon the agreement of the parties, the trial court orally granted Mr. Haire's motion to amend, but the order reflecting this decision was not entered until later.[9]

The hearing on the motion to dismiss proceeded. At the conclusion of the hearing, the trial court stated: "In looking at the complaint on its face, concerning the allegations against [the Bank], I think that lacks clarity and specifics. And, also, most of these allegations against the [B]ank are conclusory and speculation and, therefore, I'm going to grant" the Bank's motion to dismiss. In its written order of dismissal, filed December 12, 2016, the trial court stated that it had granted the Bank's motion to dismiss "for the reasons presented and stated at the hearing . . . including oral argument, and the authorities set forth in the supporting [b]rief filed by the Bank, all such matters being incorporated herein by reference." The trial court directed entry of an order of dismissal with prejudice as to all of Mr. Haire's claims against the Bank and certified the judgment as final for purposes of appeal pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.[10]

---

[7] Based on statements made at the hearing on the motion to dismiss, Mr. Haire apparently filed his motion to amend late in the day on the Friday before the scheduled Monday hearing on the motion to dismiss, even though the motion to dismiss had been pending for about three months.

[8] The amended complaint also included the numerous other claims Mr. Haire brought against the other defendants, but as already noted, only the claims Mr. Haire brought against the Bank are at issue in this appeal.

[9] The order granting Mr. Haire's motion to amend was filed on March 1, 2017.

[10] The trial court granted the Bank's request for attorney's fees and costs but reserved decision on the assessment of reasonable and necessary attorney's fees and litigation costs until the conclusion of the appeal. On its face, this ruling seemingly conflicts with prior Court of Appeals' decisions holding that a case may not be certified as final for purposes of appeal under Rule 54.02 if a trial court reserves a ruling

Mr. Haire appealed from this December 12, 2016 order. The Court of Appeals affirmed the trial court's judgment granting the Bank's motion to dismiss. In so holding, the Court of Appeals stated:

> It is unclear to us how, taking all of Danny Haire's allegations as true, the Bank would be liable. It is no small matter to a breach of contract claim that a contract is not produced or cited. In this case, the Bank was a mere stakeholder for the funds in the joint account. When [Mother] designated Danny Haire as a joint tenant with right of survivorship to her accounts, the Bank executed her wishes. When [Mother] removed Danny Haire as joint tenant on the accounts, the Bank also executed her wishes. Danny Haire acknowledges that [Mother] could have withdrawn the entire sum from the joint accounts if she wished. That effectively is what happened here.
>
> We are not tasked in this appeal with determining any liability for the Haire siblings for their role in these events or any possible claim Danny Haire might have against [Mother's] estate. We are concerned only with the Bank's role herein. In our judgment, the Bank simply did what it was asked to do by an account holder as allowed by Tennessee law.
>
> Taking all of the factual allegations in Danny Haire's amended complaint as true and construing the amended complaint liberally in favor of Danny Haire, as we must at this stage, we agree with the Trial Court and hold that Danny Haire failed to state a claim for which relief may be granted. We affirm the judgment of the Trial Court.

on a request for attorney's fees. See E Sols. for Bldgs., LLC v. Knestrick Contractor, Inc., No. M2017-00732-COA-R3-CV, 2018 WL 1831116, at *3–4 (Tenn. Ct. App. Apr. 17, 2018), perm. app. denied (Tenn. Aug. 9, 2018). But the trial court here acted pursuant to Tennessee Code Annotated section 20-12-119(c)(3), which states that an award of attorney's fees and costs made upon the granting of a motion to dismiss for failure to state a claim "shall be made only after all appeals of the issue of the granting of the motion to dismiss have been exhausted and if the final outcome is the granting of the motion to dismiss." Tenn. Code Ann. § 20-12-119(c)(3) (Supp. 2018). The interplay between prior decisions of the Court of Appeals and section 20-12-119(c)(3) has generated some confusion concerning the certification of orders as final under Rule 54.02. See Snyder v. First Tenn. Bank, N.A., No. E2013-01524-COA-R3-CV (Tenn. Ct. App. Oct. 28, 2013) (unpublished order requiring a plaintiff to explain why a trial court's reservation of the assessment of attorney's fees pursuant to Tennessee Code Annotated section 20-12-119(c) qualified as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02). We conclude that a trial court's compliance with section 20-12-119(c) does not prevent the certification of an order as final for purposes of appeal under Rule 54.02. See Snyder v. First Tenn. Bank, N.A., No. E2013-01524-COA-R3-CV (Tenn. Ct. App. Jan. 15, 2014) (unpublished order acknowledging that, due to the language in Tennessee Code Annotated section 20-12-119(c), the case was final for purposes of appeal under Rule 54.02 even though the trial court had reserved assessment of attorney's fees).

<u>Estate of Haire v. Webster</u>, No. E2017-00066-COA-R3-CV, 2017 WL 5899860, at \*11 (Tenn. Ct. App. Nov. 29, 2017).

Mr. Haire then applied for permission to appeal to this Court. We granted the application and address two issues: (1) whether Mr. Haire sufficiently complied with Rule 10.03 of the Tennessee Rules of Civil Procedure by attaching the signature cards to his complaint; and (2) whether the allegations of Mr. Haire's complaint are sufficient to survive the Bank's motion to dismiss for failure to state a claim for relief.[11]

## II. Standard of Review

This appeal arises from the trial court's decision granting the Bank's motion to dismiss for failure to state a claim under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. A motion to dismiss on this ground "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." <u>Webb v. Nashville Area Habitat for Humanity, Inc.</u>, 346 S.W.3d 422, 426 (Tenn. 2011) (citation omitted). The relevant and material allegations of the complaint are taken as true, and the plaintiff is afforded the benefit of all reasonable inferences that may be drawn from the allegations. <u>Webb</u>, 346 S.W.3d at 426; <u>Brown v. Tenn. Title Loans, Inc.</u>, 328 S.W.3d 850, 854 (Tenn. 2010). To survive a motion to dismiss, "'[t]he facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level.'" <u>Webb</u>, 346 S.W.3d at 427 (quoting <u>Abshure v. Methodist Healthcare–Memphis Hosps.</u>, 325 S.W.3d 98, 104 (Tenn. 2010)). "[L]egal arguments or 'legal conclusions' couched as facts" are not taken as true. <u>Moore-Pennoyer v. State</u>, 515 S.W.3d 271, 276 (Tenn. 2017) (quoting <u>Webb</u>, 346 S.W.3d at 427). We apply de novo review to the lower court's legal conclusions, including its ruling on the legal sufficiency of the complaint. <u>Webb</u>, 346 S.W.3d at 426. "De novo review also applies to the questions of statutory construction presented in this appeal . . . ." <u>Smith v. Tenn. Nat'l Guard</u>, 551 S.W.3d 702, 708 (Tenn. 2018) (citing <u>Moreno v. City of Clarksville</u>, 479 S.W.3d 795, 802 (Tenn. 2015)).

## III. Analysis

### *A. Compliance with Rule 10.03*

We consider first whether Mr. Haire complied with Rule 10.03 of the Tennessee Rules of Civil Procedure. Rule 10.03 provides:

Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts

---

[11] Mr. Haire does not contest the trial court's dismissal of his breach of bailment contract claim, and this appeal involves only the claims he alleged against the Bank in his individual capacity.

thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

Here, Mr. Haire attached several exhibits to his complaint, including the signature cards he and Mother completed in April 2008 and October 2009 and the signature cards others completed from June 2012 to October 2013 by which he was removed from the savings and checking accounts. While Mr. Haire has alleged a breach of contract claim against the Bank, his claim is not premised on an allegation that specific language of the signature cards or account agreements obligated the Bank to obtain his consent before removing his name from the accounts. Rather, Mr. Haire's claim is based on his assertion that he is a co-owner of the accounts by virtue of his status as a joint tenant with right of survivorship on the accounts. This status, he asserts, obligated the Bank to obtain his consent before removing him from the accounts. The signature cards Mr. Haire attached to the complaint confirm that he was by contract a joint tenant with right of survivorship on the accounts, and the Bank does not dispute his status as such. Therefore, we conclude that Mr. Haire sufficiently complied with Rule 10.03 by attaching the signature cards reflecting his status a joint tenant with right of survivorship, which is the basis of his breach of contract claim.

## B. Sufficiency of the Complaint

To determine whether the allegations of Mr. Haire's complaint, taken as true, are sufficient to state a claim for relief, we begin with basic principles concerning the nature of joint tenancy with right of survivorship bank accounts. Tennessee citizens may establish multiple-party bank accounts as joint tenants with right of survivorship. Tenn. Code Ann. § 45-2-703(d)(1)(A), (e)(4).[12] Indeed, banks are statutorily required to offer customers the option of choosing the ownership designation "[j]oint tenants with right of

---

[12] At common law, a joint tenancy incidentally and implicitly included a right of survivorship. Bryant v. Bryant, 522 S.W.3d 392, 399 (Tenn. 2017). But Tennessee never adopted this common-law definition. Id. at 402–03; see also Tenn. Code Ann. § 66-1-107 (2015) ("In all estates, real or personal, held in joint tenancy, the part or share of any tenant dying shall not descend or go to the surviving tenant or tenants, but shall descend or be vested in the heirs, executors, or administrators, respectively, of the tenant so dying, in the same manner as estates held by tenancy in common."). So, a joint tenancy with right of survivorship must be expressly created. Tenn. Code Ann. § 45-2-703(e)(4) (discussing multiple-party bank accounts and stating that "property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated").

survivorship" when multiple-party accounts are opened or amended.  Tenn. Code Ann. § 45-2-703(d)(1)(A).[13]  Here, Mother and Mr. Haire selected that ownership designation when amending Mother's existing checking and savings accounts at the Bank after Father died.

The creation of a joint tenancy with right of survivorship account gives rise to a contractual relationship between the depositors and the financial institution.  Lowry v. Lowry, 541 S.W.2d 128, 131–32 (Tenn. 1976) ("[A] joint account agreement with rights of survivorship establishes a contract which transfers the account proceeds at death by operation of law."); see also In re Estate of Miller, 158 S.W.3d 429, 435 (Tenn. Ct. App. 2004) (recognizing that when a customer opens a deposit account, a contractual relationship forms between the customer and the bank evidenced by the signature card and/or other documents that show the terms under which the account will be managed).  Therefore, as Mr. Haire alleged, a contractual relationship arose between the Bank, Mr. Haire, and Mother when the accounts were established.

Additionally, each joint tenant is considered an owner of the account, with equal authority to withdraw funds from the account and with presumptively equal ownership of account funds.  A statute declares the right of joint tenants to withdraw funds from a multiple-party account, stating:

---

[13] Subsection (d) provides:

(d)(1) When opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents that enable the depositor to designate ownership interest therein in terms substantially similar to the following:
  (A) Joint tenants with right of survivorship;
  (B) Additional authorized signatory; and
  (C) Other deposit designations that may be acceptable to the bank.

(2) Account documents that enable the depositor to indicate the depositor's intent of the ownership interest in any multiple-party deposit account may include any of the following:
  (A) The signature card;
  (B) The deposit agreement;
  (C) A certificate of deposit;
  (D) A document confirming purchase of a certificate of deposit;  or
  (E) Other documents provided by the bank or deposit institution that indicate the intent of the depositor.

Tenn. Code Ann. § 45-2-703(d).  The Court of Appeals has stated that statutes "addressing ownership designations for multiple-party deposit accounts evince [the General Assembly's] quest for clarity, certainty, and a reasonable amount of uniformity so as to reduce error and limit bank liability for the payment of funds from such accounts."  In re Estate of Nelson, No. W2006-00030-COA-R3CV, 2007 WL 851265, at *11 (Tenn. Ct. App. Mar. 22, 2007).

When a deposit has been made or is hereafter made, in any bank, in the names of two (2) or more persons, payable to either, or survivor, the deposit, or any part of the deposit, or any interest or dividend on the deposit, *may be paid to either person, whether the others are living or not . . . .*

Tenn. Code Ann. § 45-2-703(a) (emphasis added).  The presumption of equal ownership is reinforced by another portion of section 45-2-703(a), which provides that funds in a multiple-party account are "subject to assignment by, or the claim of any creditor of, either depositor, as if the depositor were the sole owner of the funds," but this statute does not prevent another joint tenant from filing suit against a creditor to establish his or her own rights in the funds.  Id.[14]

Prior Tennessee decisions also describe joint tenants with right of survivorship as owners of bank accounts with presumptively equal ownership interests in the account funds.  As the Court of Appeals has explained:

Where funds are on deposit in a joint account with right of survivorship, we hold that during the lifetime of the joint tenants a rebuttable presumption arises that the parties own the money on deposit equally.  As a consequence, upon a suit by one joint tenant against the other, the parties may prove the ownership of the funds that went into the account.

Even though a joint tenant may withdraw the entire fund, one who does withdraw funds in excess of his moiety is liable to the other joint tenant for the excess so withdrawn.

Leffew v. Mayes, 685 S.W.2d 288, 291 (Tenn. Ct. App. 1984) (citations omitted), perm. app. denied (Tenn. Oct. 29, 1984), quoted with approval in Knight v. Lancaster, 988 S.W.2d 172, 174–75 (Tenn. Ct. App. 1998), perm. app. denied (Tenn. Feb. 1, 1999).

As the foregoing discussion illustrates, joint tenants with right of survivorship on a multiple-party bank account in Tennessee are in a contractual relationship with the bank.  Each joint tenant is considered an owner of the account.  Each joint tenant has an unlimited right to withdraw from the account.  Joint tenants are presumptively equal owners of the funds in the account during their lifetimes.  Evaluated against these legal

---

[14] By contrast, persons described by the other statutory ownership designations or by any other ownership not designated in the statute are expressly deemed not to be owners of multiple-party accounts. Tenn. Code Ann. § 45-2-703(e)(2) (stating that an authorized signatory "is not an owner of the account"); Tenn. Code Ann. § 45-2-703(e)(4) (stating that persons identified by any designation other than those enumerated in the statute "shall be presumed to have power of attorney with respect to the account . . . and not to be an owner of the account").

principles, the allegations of Mr. Haire's complaint are sufficient to state claims for relief against the Bank. Mr. Haire was an owner of the account in a contractual relationship with the Bank, along with Mother. Contracts in Tennessee may not be modified except with the consent of all the parties. Galbreath v. Harris, 811 S.W.2d 88, 92 (Tenn. Ct. App. 1990) (citing V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., 595 S.W.2d 474, 482 (Tenn. 1980)). Mr. Haire alleges that the Bank modified the contract without his consent by processing new signature cards that changed the ownership of the account. He also alleges that the Bank owed him a duty of care as a co-owner of the accounts and breached its duty of care "by accepting the forged signature on the signature cards and removing [Mr. Haire] as a co-owner" and that this breach constitutes negligence. Mr. Haire's allegations, taken as true for purposes of this appeal, are sufficient to state claims for relief.

Nevertheless, the Bank asks us to affirm the decision of the Court of Appeals by interpreting Tennessee Code Annotated section 45-2-703(a) as affording it protection from liability in these circumstances. This statute provides banks with protection from liability for paying funds from a multiple-party account to a person on the account, stating, "*the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.*" Tenn. Code Ann. § 45-2-703(a) (emphasis added). The Bank asserts that its removal of Mr. Haire's name from the accounts had the same practical effect as paying all the funds in the accounts to Mother for which section 45-2-703(a) expressly provides it protection. In support of its argument, the Bank cites decisions from other jurisdictions, including Arkansas, Colorado, and Kentucky,[15] that have described a joint tenant's right to withdraw all funds from a joint account as encompassing the right to remove the names of other joint tenants from the account.

---

[15] McEntire v. McEntire's Estate, 590 S.W.2d 241 (Ark. 1979); Kacirek v. Mangan, 489 P.2d 342 (Colo. Ct. App. 1971); Bealert v. Mitchell, 585 S.W.2d 417 (Ky. 1979). The Bank also argues that this Court essentially adopted the Arkansas approach for which it advocates in this appeal in our recent decision In re Estate of Fletcher, 538 S.W.3d 444 (Tenn. 2017), by citing and adopting a portion of the holding in McEntire. The Bank is mistaken. The only portion of McEntire adopted in Fletcher is its holding that funds withdrawn from a tenancy by the entireties bank account cease to be part of the estate by the entireties. 538 S.W.3d at 454 ("We adopt the Arkansas approach and hold that, once a husband or wife withdraws funds from a joint bank account held as tenants by the entirety, the funds cease to be held by the entirety."). Fletcher did not involve the issue of whether a bank has an obligation to obtain the consent of a joint tenant before removing the joint tenant's name from a multiple-party account. In Fletcher, the husband did not remove his wife's name from the account. He simply withdrew most of the funds from the account and placed them in a certificate of deposit in his name alone. Id. at 445. The Bank's reliance upon Fletcher to support its position in this appeal is misplaced.

Mr. Haire, in response, agrees that section 45-2-703(a) would have provided the Bank with protection from liability had it simply paid Mother all the funds in the account. Mr. Haire emphasizes, however, that the Bank did not actually pay Mother all the funds and that the statute simply does not provide the Bank with protection from liability for removing his name from the account without his consent. Mr. Haire also relies on decisions from New York and Maryland[16] to support his position that section 45-2-703(a) should not be interpreted as affording the Bank protection from liability in these circumstances.[17]

We have carefully examined the decisions from other jurisdictions each side has provided. Few of these decisions involve disputes between a joint tenant and a bank, and the holdings in these cases are heavily dependent on the specific facts of the cases, as well as the statutes and precedent of the jurisdictions in which the cases arose. Our task in this appeal is not to determine, by reference to a survey of the law in other jurisdictions, whether the Bank is protected from liability. Rather, our task is to determine only whether Tennessee Code Annotated section 45-2-703 provides the Bank with protection from liability in these circumstances. This task requires us to apply the following familiar rules of statutory construction.

"Our primary objective when construing statutes is to determine and carry out legislative intent without broadening or restricting statutes beyond their intended scope." State v. Gentry, 538 S.W.3d 413, 420 (Tenn. 2017) (citing State v. Pope, 427 S.W.3d 363, 368 (Tenn. 2013)). "Courts may neither alter or amend statutes nor substitute our own policy judgments for those of the General Assembly." Gentry, 538 S.W.3d at 426 (citing Britt v. Dyer's Emp't Agency, Inc., 396 S.W.3d 519, 523 (Tenn. 2013)). We always begin with the words used in a statute, and when "the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage." Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC, 433 S.W.3d 512, 517 (Tenn. 2014) (citing Baker v. State, 417 S.W.3d 428, 433 (Tenn. 2013)).

---

[16] Wright v. Commercial & Sav. Bank, 464 A.2d 1080 (Md. 1983); Brown v. Bowery Sav. Bank, 415 N.E.2d 906 (N.Y. 1980).

[17] As an alternative argument, Mr. Haire invites this Court to apply our recent decision in Bryant to this case and hold that, when his name was removed from the bank account, the joint tenancy terminated, and he and Mother held the funds as tenants in common. We decline Mr. Haire's invitation. The issue in this appeal is only whether the allegations of Mr. Haire's complaint are sufficient to survive the Bank's motion to dismiss for failure to state a claim for relief, and nothing more than that. Bryant, which involved real property, not joint tenancy with right of survivorship bank accounts, 522 S.W.3d at 399, has no bearing on the question presented by this appeal.

Applying these guiding principles, we conclude that the language of section 45-2-703(a) simply does not provide the Bank with protection from liability for removing a joint tenant's name from a multiple-party joint tenancy with right of survivorship account. The Legislature is certainly free to provide such protection, but it has not done so in section 45-2-703(a).[18] We are not at liberty to read this protection from liability into the statute. We agree with the Bank and Mr. Haire that the Bank would have had protection from liability under Tennessee Code Annotated section 45-2-703(a) had it "paid" Mother all of the funds in the accounts. In that instance, Mother's "receipt or acquittance" of the funds would have constituted "a valid and sufficient release and discharge to the bank for any payment so made." But the Bank made no payment to Mother, and section 45-2-703(a) simply does not address the factual circumstances on which Mr. Haire bases his claims against the Bank.

In declining to interpret the statute beyond its expressed terms, we adopt the reasoning that the Court of Appeals of New York used when declining to interpret a similar New York statute as providing a bank protection from liability in similar circumstances:

> Although the end result was the same in the sense that plaintiff was deprived of her share of half of the funds in the account, this was accomplished through a different method removing her name from the account rather than withdrawing the money from the account. Because the Legislature chose to insulate savings banks from liability when one joint tenant wrongfully deprives another of an interest by one route, it does not follow that courts should stretch the statute to confer immunity when the tenant uses another avenue. This is especially true when the methods differ in important respects. Immunity from liability where one joint tenant withdraws more than his or her moiety from an account without the other tenant's permission relieves the bank of the burdensome responsibility of monitoring each withdrawal from a joint account to ensure that one joint tenant is not misappropriating another's funds. Obtaining the acquiescence of a joint tenant before removing his or her name from an account, however, poses a much lesser burden. Extending the statute to absolve

---

[18] We note that three states—California, Georgia, and South Carolina—have enacted statutes delineating how modifications to ownership of multiple-party accounts may be accomplished. Cal. Prob. Code § 5303(b)(1)–(3) (West, Westlaw through Ch. 2 of 2019 Reg. Sess.) (requiring all parties with a right of withdrawal to give consent before a financial institution can modify a multiple-party account); Ga. Code Ann. § 7-1-814 (West, Westlaw Act 1 of the 2019 legislative session) (requiring consent from all parties before the terms of a multiple-party account can be changed); S.C. Code Ann. § 34-30-1630(A)(3) (West, Westlaw through 2018 Act No. 292) (noting that all tenants to a joint tenancy account must agree on which of them has the right to remove a joint tenant from the account).

savings banks from liability for failing to obtain such acquiescence is therefore an action more appropriately left to the Legislature.

Brown, 415 N.E.2d at 908–09.

Finally, we also reject the Bank's alternative argument that the trial court's decision granting its motion to dismiss should be affirmed on the separate ground that Mr. Haire has failed to allege damages. According to the Bank, because Mr. Haire has not alleged that he contributed any funds to the accounts, Mr. Haire has failed to allege grounds to establish that he could have recovered against Mother "even if he had known of and disputed the changes in the [a]ccounts." The Bank argues, therefore, that because Mr. Haire has failed to allege a basis for recovery against Mother during her lifetime, he has failed to allege a basis for recovery against the Bank for removing his name from the accounts to which he made no contributions. The Bank's argument fails to recognize, however, that Mr. Haire's status as a joint tenant with right of survivorship on the accounts with Mother gave rise to a rebuttable presumption that Mr. Haire was an equal owner of the funds in the accounts. The Bank may ultimately be able to overcome this rebuttable presumption and prevail on its claim that Mr. Haire cannot prove damages, but at this preliminary stage of the litigation, we afford Mr. Haire the benefit of the rebuttable presumption in evaluating whether his complaint is sufficient to survive the Bank's motion to dismiss for failure to state a claim. In this appeal, we assess only the sufficiency of Mr. Haire's complaint, not the merits of his alleged claims.

## IV. Conclusion

For the reasons stated herein, we reverse the Court of Appeals' decision upholding the trial court's judgment granting the Bank's motion to dismiss for failure to state a claim upon which relief may be granted. We remand this matter to the trial court for further proceedings consistent with this decision. Costs of this appeal are taxed to the Bank for which execution may, if necessary, issue.

_____
CORNELIA A. CLARK, JUSTICE

- 15 -